Patricia **TERWILLIGER**, Appellant,

v.

**SNAP–ON TOOLS CORPORATION**, Employer, and **Royal Insurance Company**, Insurance Carrier, Appellees.

No. 94–212.

Supreme Court of Iowa.

Feb. 22, 1995.

As Amended on Denial of Rehearing March 28, 1995.

Mark S. Soldat, Algona, for appellant.

Paul C. Thune of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellees.

## ORDER ON PETITION
## FOR REHEARING

In response to the petition for rehearing filed by the appellant on March 10, 1995, the court en banc, hereby amends the opinion filed in this case on February 22, 1995. A copy of the opinion as so amended is attached to this order.

The petition for rehearing is considered with respect to the opinion as now revised and is denied.

/s/ Bruce M. Snell, Jr.
Bruce M. Snell, Jr.
Justice

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

[Filed Feb. 22, 1995]

SNELL, Justice.

Patricia A. Terwilliger appeals a district court affirmance of a decision of the industrial commissioner which granted her workers' compensation benefits for work-related impairment to her hands. The district court held that the commissioner properly weighed conflicting medical and lay evidence in arriving at his impairment determination and detailed his analysis methodology so that the court could engage in proper judicial review. The trial court then held that the commissioner based his decision on substantial evidence. On appeal, Terwilliger asserts that we should engage in a more scrutinizing analysis than that in which courts of this state have traditionally engaged when reviewing decisions of the industrial commissioner. We affirm.

## I. Factual Background

Terwilliger began working for the Snap-On Tools Corporation in December of 1973. She initially began her employment as an electrical assembler but in 1978 was promoted to the position of "lead worker." As a lead worker, she did not work on an assembly line, but instead trained other workers and set up individual work stations.

Terwilliger first began to experience pain in 1978 after lifting a box. In 1978 on three different occasions, she reported pain in her neck, chest, and shoulder blades and tingling and numbness in her fingers. From 1978 to 1983, she experienced pain in her fingers, back, and neck at different times, and though she received medical treatment as a result of some of the incidents, she missed no work during this time.

On October 2, 1984, Terwilliger reported pain in her right wrist and arm while work-ing and subsequently was off work until October 15, 1984 due to inflammation of her right shoulder joint. From October 9, 1984 to October 18, 1984, she complained of headaches. On January 23, 1985, she hit a deer while driving her vehicle and suffered a whiplash injury to her neck, left shoulder, and hand. She returned to work after this incident on February 11, 1985.

On March 21, 1985, Terwilliger reported hand numbness, right and left elbow pain, and tingling in her leg. She missed work as a result of this pain until May 13, 1985. During this absence, at least three doctors treated her and diagnosed her as suffering from ailments including either work-related carpal tunnel syndrome or tendonitis, musculoskeletal pain with functional overlay, and hysterical neurosis. In April of 1985, Dr. Jack L. Dodd performed a Minnesota Multiphasic Personality Inventory Test (MMPI) on Terwilliger, and Dr. Michael J. Kitchell examined her. Dr. Kitchell noted that the MMPI was very abnormal, consistent with a conversion reaction, and that individuals with such a profile develop physical symptoms as a reaction to mental or environmental stress. From December of 1985 to May of 1987, Terwilliger reported pain in her neck and right side, fingers, wrist, and elbow.

As a result of the difficulties with her fingers, wrists, and elbows, she missed work from August 24, 1987 to February 22, 1988. During this time, she underwent two carpal tunnel surgeries. After the surgeries, in May of 1988, Dr. Ronald S. Bergman evaluated Terwilliger's impairment as permanent partial impairment of two percent to her right hand and one percent to her left hand.

In February and March of 1988, she complained of pain in her hands, arms, shoulders, and neck and received treatment for pain in her leg, shoulder, and elbow as well as treatment for anxiety and depression. In late March of 1988, Dr. Alfredo D. Socarras observed her, and stated that she suffered from a large functional element and advised her to quit working. After conducting tests of both of her upper extremities, Dr. Socarras concluded that she did not suffer from carpal tunnel syndrome.

Dr. Michael W. Crane observed Terwilliger for Snap–On and the Royal Insurance Company in June of 1988. He concluded that she suffered from a "tendonitis type chronic pain picture" and concluded that she was not at that time suffering from carpal tunnel syndrome. Dr. Crane assigned her a rating of permanent partial impairment of three percent to each hand and also treated her for depression. Dr. Crane was unable to find any objective evidence of shoulder or neck impairment or pain.

On June 9, 1988, Terwilliger filed four petitions seeking workers' compensation benefits which named Snap–On and Royal Insurance as Snap–On's insurance carrier. Three of these petitions alleged injuries to Terwilliger's upper extremities, shoulders, and neck occurring in 1984, 1985, and 1988. The fourth petition alleged injury to her legs.

The Iowa Deputy Industrial Commissioner heard this case on September 5, 1989. During this hearing, Terwilliger dismissed her petition which sought recovery for injury to her legs. Following the hearing, the deputy commissioner held that the statute of limitations barred Terwilliger's claims which allegedly arose from injuries in 1984 and 1985.

On the issue of Terwilliger's sole remaining claim, she presented at the hearing the testimony of six lay witnesses who stated that they had observed that her hands were swollen when she returned to work following the carpal tunnel surgery. The lay witnesses further testified that they observed that Terwilliger experienced difficulty in using her hands and fingers and that her ability to perform work tasks suffered considerable impairment.

Despite the lay testimony, the deputy commissioner placed greater reliance on the medical evidence presented at the hearing. The deputy commissioner held that Terwilliger sustained bilateral carpal tunnel syndrome to her right and left hands as a result of cumulative work-related injury which resulted from an accident which occurred on August 24, 1987. The deputy held that the injury resulted in a three percent impairment to each of Terwilliger's hands and this translated to a four percent injury of her whole body for purposes of determining the proper award of permanent partial disability benefits. The deputy commissioner subsequently awarded Terwilliger twenty weeks of permanent partial disability benefits and twenty-eight weeks of healing period benefits.

Terwilliger then filed a sixty-four page petition for rehearing. Rehearing was denied and appeal of the deputy industrial commissioner's decision was taken to the Iowa Industrial Commissioner.

Twenty challenges to the deputy commissioner's decision were made before the industrial commissioner. The commissioner affirmed the deputy's finding that Terwilliger sustained a work injury on August 24, 1987 when her bilateral carpal tunnel injury caused her to miss work. The commissioner ultimately adopted the deputy commissioner's findings regarding permanent partial disability and healing period benefits but increased the weekly sums for these benefits from $167.54 to $253.05 due to a determination that the deputy had used an improperly low hourly pay rate. The commissioner further held that Terwilliger was not entitled to industrial disability benefits because her injury was limited to her hands and wrists and did not extend to her body as a whole. In addition, the commissioner held: (1) Terwilliger failed to carry her burden to prove that a work injury caused her neck and shoulder pain; and (2) penalty benefits were not appropriate because the delay in payment of benefits to Terwilliger was not unreasonable.

Terwilliger sought judicial review of the industrial commissioner's ruling. The district court held that the industrial commissioner failed to indicate whether he had considered all relevant evidence in the record in determining the extent of functional impairment to Terwilliger's hands. The court therefore remanded to the agency with instructions that it should evaluate all germane impairment evidence including a possible preexisting psychological condition in reaching its impairment determination. The district court affirmed the commissioner's decision in all other respects and taxed the costs of the appeal three-fourths to Terwilliger.

Terwilliger appealed the district court's decision and the court of appeals affirmed

the district court and remanded the case back to the industrial commissioner. The court of appeals taxed the costs of the appeal to Terwilliger. On remand, the industrial commissioner affirmed the previous holding of the industrial commissioner and noted specifically that he had considered the lay witness testimony but the medical evidence was more reliable than the lay testimony. The commissioner considered lay testimony suspect due to the possibility that Terwilliger had magnified her symptoms. The commissioner held that the record included insufficient reliable evidence to support a finding that the extent of Terwilliger's impairment exceeded the amount of impairment the medical evaluations suggested. The commissioner further held that insufficient evidence existed to support a finding that Terwilliger suffered from a preexisting psychological condition prior to her August 24, 1987 injury or that if such an injury did exist a scheduled injury caused or aggravated it.

Terwilliger appealed the industrial commissioner's remand decision to the district court. The district court affirmed the industrial commissioner's decision on the ground that substantial evidence supported the commissioner's ruling. The district court noted that the commissioner had considered both the lay and medical evidence and found the medical evidence more reliable since the opinions of the two doctors who rendered impairment ratings were very close to each other. The district court also noted that the commissioner held that the lay testimony was not as reliable as the medical evidence because of the possibility that Terwilliger magnified her symptoms. The district court held that the commissioner's reasoning was sufficiently certain to enable the court to ascertain the factual basis on which the commissioner based his opinion and found that that factual basis provided substantial evidence to support the commissioner's decision.

Terwilliger has appealed to this court. On appeal before this court, Terwilliger essentially raises the following arguments: (1) this court should hold that the substantial evidence test requires a more scrutinizing analysis than that which courts have customarily used when reviewing decisions of the indus-

trial commissioner; (2) the industrial commissioner erred in rejecting the lay testimony and basing his decision on medical evidence; and (3) if this court should find that a complete reversal of the commissioner's decision is not warranted, we should remand to the commissioner with "exceedingly specific instructions" directing the commissioner to weigh all evidence in the record and requiring him to explicitly explain why he rejects or does not reject every piece of evidence in the record that relates to functional disability.

## II. Standard of Review

■■■ The standard by which we review decisions of administrative agencies is well-settled. We review an agency's decision for errors of law and do not exercise a de novo review. *Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993). When we review findings of the industrial commissioner, those findings carry the effect of a jury verdict. *Id.* We will reverse an agency's findings only if, after reviewing the record as a whole, we determine that substantial evidence does not support them. Iowa Code § 17A.19(8)(f) (1993); *Sierra v. Employment Appeal Bd.*, 508 N.W.2d 719, 720 (Iowa 1993). Evidence is substantial if a reasonable mind would accept it as adequate to reach the conclusion at issue. *Suluki v. Employment Appeal Bd.*, 503 N.W.2d 402, 404 (Iowa 1993). The mere fact that we could draw inconsistent conclusions from the same evidence does not mean that substantial evidence does not support the commissioner's determinations. *Kostelac*, 497 N.W.2d at 856; *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 846 (Iowa 1991). The ultimate question is not whether the evidence supports a different finding but whether it supports the findings the commissioner actually made. *Reed*, 478 N.W.2d at 846.

## III. Issues on Appeal

### A. Substantial Evidence Review

■■ At the outset, Terwilliger challenges the methodology this court and other courts have used in applying substantial evidence review of decisions of the industrial commissioner. Terwilliger refers to the way which

Iowa courts have used this test in the context of workers' compensation as the "substantial evidence rubberstamp," and an "abdication of the judicial duty of judicial review." Terwilliger asserts that there is a distinction between reviewing a decision for support by substantial evidence and reviewing a decision for support by substantial evidence *on the record as a whole* and asserts that since we are applying the latter standard we must apply a "scrutinizing analysis" to the commissioner's findings beyond that which this court has traditionally used.

■ Terwilliger essentially presents a veiled argument that we should change the standard for judicial review to de novo or something near it. Our cases and statutes have long established the substantial evidence test for judicial review of agency determinations. *See Miller v. Lauridsen Foods, Inc.,* 525 N.W.2d 417, 420 (Iowa 1994); Iowa Code § 17A.19(8)(f). Such a change is for the legislature's evaluation. *Id.* We note, however, that even though we expressly refuse to adopt the test Terwilliger urges us to apply, the court's review of the commissioner's decision satisfies even Terwilliger's own test.

The commissioner's remand opinion clearly demonstrates that substantial evidence supports the commissioner's determinations. The opinion provides in relevant part:

> In this case claimant has received impairment ratings from two doctors. Dr. Bergman's ratings were two percent of the right hand and one percent of the left hand. Dr. Crane rated claimant [as] having a three percent "disability" of each hand. The lay testimony in this case does not contradict nor outweigh the impairment ratings of the doctors. It was recognized in 1985 that claimant may magnify her symptoms. The symptom magnifica-

tion would make the subjective lay testimony suspect. The medical testimony is more reliable. The impairment evaluation by Drs. Crane and Bergman are very similar. There is insufficient reliable evidence in the record to find that the extent of claimant's disability exceeds the medical evaluations. . . . When all the evidence is given the proper weight and consideration, it is found that claimant suffered a three percent disability to each hand from her bilateral carpal tunnel syndrome.[1]

Terwilliger asserts that the district court should have taken into account all evidence in the record that fairly detracts from the evidence on which the commissioner based his determination. It is clear from the excerpt that the commissioner considered the medical evidence presented as well as the lay witness testimony. The district court, in reviewing the commissioner's decision for substantial evidence, explicitly noted the existence of both the medical and lay evidence and held clearly that the commissioner considered all germane evidence and accepted the medical opinion of the doctors over the testimony of the lay witnesses.

■ Terwilliger also asserts that a substantial evidence review requires the court to take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. It is clear that the commissioner engaged in a weighing of the evidence in the record and held that the medical testimony outweighed the lay testimony. In reviewing the commissioner's decision, the district court accurately noted that it is the commissioner's role as finder of fact to determine the weight to be afforded expert testimony. *Rockwell Graphic Sys., Inc. v. Prince,* 366 N.W.2d 187, 192 (Iowa 1985). After noting that the commissioner found that the medical testimony outweighed the lay testimony due to the com-

---

1. We note at this juncture the absolute inaccuracy of Terwilliger's assertion that it is "an immutable fact in and the law of this case" that the commissioner did not initially consider lay testimony when determining the extent of Terwilliger's functional impairment. This erroneous conclusion appears to arise due to Terwilliger's selective reading and misunderstanding of the district court's initial decision. In that opinion, the district court stated "[p]erhaps the . . . com-

missioner did take into consideration the lay testimony and decided that the medical testimony of Dr. Bergman and . Dr. Crane was more reliable, but this is not stated in the decision." The district court opinion did not hold that the commissioner failed to consider all relevant evidence in arriving at his determination but instead merely instructed the commissioner to clarify how he arrived at his determination.

missioner's concerns about Terwilliger's magnification of her symptoms, the court properly held this clear line of rationale provided substantial evidence to support the commissioner's determinations.

■ Terwilliger further asserts that the district court and this court should apply the standards located in Iowa Code section 17A.19(8)(g) in reviewing the commissioner's decision. Section 17A.19(8)(g) is not the correct standard for review of an agency decision in a contested case, and even if we applied that standard, nothing in the commissioner's opinion suggests that it was unreasonable, arbitrary or capricious, or amounted to an abuse of discretion.

### B. Medical and Lay Testimony

■ Terwilliger argues essentially that where credible lay testimony exists in addition to medical testimony, the commissioner is straitjacketed from rejecting the lay testimony if it contradicts the medical testimony. Terwilliger informs us that the commissioner should consider lay testimony in reaching an impairment determination and notes that an impairment determination may even stand where there is no medical testimony whatever.

■ The law requires the commissioner to consider all evidence, both medical and nonmedical, in arriving at a disability determination. *Miller*, 525 N.W.2d at 420. We have held that lay witness testimony is relevant and material on the issue of cause and extent of an injury. *Id.* However, it is a basic tenet of law that it remains within the province of the industrial commissioner to weigh the facts presented to him and it is entirely within his right to reject any evidence he considers less reliable than other contradictory testimony. *See Rockwell*, 366 N.W.2d at 192; *Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 66 (Iowa App.1994).

The commissioner explicitly noted that he considered both the medical and lay evidence and considered the medical evidence more reliable because of the likelihood that Terwilliger magnified her symptoms. Substantial evidence supports the commissioner's concern regarding Terwilliger's symptom magnification. At least four of the doctors who have observed Terwilliger expressed a belief that emotional magnification or functional overlay served to increase the outward appearance of Terwilliger's discomfort.

■ After reviewing the results of the MMPI test performed on Terwilliger, Dr. Dodd noted:

> This is a classic conversion. These individuals often present as being physically ill, pain being the chief complaint frequently. Pain tends to be localized in the extremities, head, neck or back. These individuals characteristically develop physical symptoms as reaction to mental or environmental stress. . . . The profile would suggest the diagnosis of hysterical neurosis, hysterical personality or psychophysiological reaction.

We note that a "conversion reaction" is a "mental defense mechanism whereby unconscious emotional conflict is transformed into physical disability." *Redfern v. Sparks–Withington Co.*, 353 Mich. 286, 91 N.W.2d 516, 518 (1958) (quoting Blakiston's New Gould Medical Dictionary 280, 1012 (2d ed. 1956)). After reviewing the MMPI, Dr. Kitchell concluded that the MMPI was "very abnormal, consistent with a conversion reaction."

■ Dr. Kitchell also noted that the MMPI was performed due to his concern that Terwilliger "had a large functional overlay to her symptoms." A functional overlay is "an ailment in addition to an already existing condition which is not caused by a structural defect." *Barrett v. Coast Range Plywood*, 294 Or. 641, 661 P.2d 926, 928 (1983). A functional overlay could be described as a psychological or psychiatric condition which manifests itself in an over-reaction or over-response to pain. *See id.* Dr. Socarras, a neurologist, also expressed a concern regarding symptom magnification. After examining Terwilliger in 1988, he noted:

> It is my opinion that there is a great disproportion between patient's complaints and the lack of objective findings. I believe that there is a large functional element in this case. . . . I cannot explain the

constellation of symptoms on the basis of a carpal tunnel syndrome.

Dr. Crane testified that he based the impairment rating he assigned to Terwilliger's injury on objective factors, and did not base his decision on subjective factors. Although Terwilliger attacks Dr. Crane's methodology, his testimony demonstrates that he quite reasonably rejected subjective considerations because he did not feel they were consistent or reliable. The doctor testified that he believed the difference between objective evidence of Terwilliger's injury and her symptoms was a result of "factors that [he] couldn't measure and were not part of [his] scope as a physician."

Two of Terwilliger's treating physicians, Dr. Bergman and Dr. Crane, evaluated Terwilliger's injury and assigned her impairment ratings. Each doctor used recognized medical methods in arriving at their ratings. The industrial commissioner based his assessment of Terwilliger's impairment on the evaluations of these two doctors, and was especially convinced of the accuracy of his determination due to the fact that the two doctors arrived at very similar conclusions. The commissioner also considered the testimony of the six witnesses who stated that their observations of Terwilliger suggested the extent of her impairment was considerably higher than the assessment the two doctors gave. The commissioner's decision to base his impairment rating on the doctors' evaluations was based on his concern that Terwilliger may have magnified her symptoms in the presence of the lay witnesses. The commissioner based his decision on evidence which a reasonable mind would accept as adequate to reach that conclusion. *See Suluki,* 503 N.W.2d at 404. We find that substantial evidence supported the commissioner's decision.

### C. Commissioner's Duty to Explain his Decision

 Terwilliger attacks the commissioner's opinion as not being sufficiently detailed and demands that if we reverse and remand, we should instruct the commissioner to weigh all the evidence in the record, state his reasons for rejecting any of the evidence, and detail the path he took to arrive at his decision. We have already said it is the duty of the commissioner to state the evidence he relied on and to detail his reasons for his conclusion. *Armstrong v. State of Iowa Bldgs. & Grounds,* 382 N.W.2d 161, 166 (Iowa 1986); *Catalfo v. Firestone Tire & Rubber Co.,* 213 N.W.2d 506, 510 (Iowa 1973). While it is true that the commissioner's decision must be "sufficiently detailed to show the path he has taken through conflicting evidence," *Catalfo,* 213 N.W.2d at 510, the law does not require the commissioner to discuss each and every fact in the record and explain why or why not he has rejected it. Such a requirement would be unnecessary and burdensome. In the case at hand, the commissioner has sufficiently detailed and explained his opinion so that we could follow his process of analysis.

We note at this juncture that this case has proceeded for six years and has resulted in three opinions of the industrial commissioner, two district court opinions, one court of appeals' decision, and with the completion of this decision, one supreme court opinion. We are concerned with the tone with which Terwilliger has addressed the decision-making of the industrial commissioner and the courts of this state throughout this process. An excerpt from Terwilliger's brief before this court is illustrative of the problem:

> [A]s Terwilliger sees it, the greater challenge for the appellate court is not necessarily whether it can avoid the temptation of falling back on the substantial evidence rubberstamp, (as appellate courts having [sic] been doing in many cases and as the trial court did here). Rather, the greater challenge for the appellate court is how to construct remand instructions which will dissuade the commissioner from his practice of fabricating decisional sleights by which to reject the lay evidence of subjective impairment.

In Terwilliger's brief before this court, Terwilliger's counsel has accused the commissioner of fabrication, seeking excuses to ignore subjective evidence, "parrotting" the medical evidence, and being recalcitrant in the practice of relying heavily on medical evidence. Terwilliger's counsel has also re-

ferred to the substantial evidence review as a mere "rubberstamp" and in closing asserts that if we apply the long-established law of this state we will not provide meaningful judicial review and remedy.

We understand the frustration of any counsel who feels that the client, despite herculean efforts by counsel, is not rewarded as hoped. However, counsel's pique does not justify an unbridled impugning of the integrity of the industrial commissioner's officers.

**AFFIRMED.**