Joseph SANCHEZ, Petitioner–Appellant,

v.

BLUE BIRD MIDWEST, Respondent–Appellee.

No. 95–0370.

Court of Appeals of Iowa.

July 26, 1996.

James P. Hoffman, Keokuk, for appellant.

Brian L. Yung of Bennett, Crimmins & Yung, Fort Dodge, for appellee.

Considered by SACKETT, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

Claimant Joseph Sanchez appeals the district court's affirmance of the industrial commissioner's finding of no causal connection between his work injury and an alleged disability. There is substantial evidence in the record to support the commissioner's finding and we affirm.

Sanchez was working for Blue Bird Midwest (Blue Bird) on January 8, 1991, when he slipped and fell on his right side and hip while pushing an 800–pound carriage used to move busses through a production line. Sanchez immediately felt pain but continued to work. The next day Sanchez had difficulty getting out of bed, but he reported for work. Sanchez testified he told his supervisor three to four days later about the injury.

On January 15, Sanchez was sent to see Dr. Readinger. Readinger determined Sanchez had acute right lower back strain. X-rays of the hip and lower back indicated Sanchez had an old chip fracture at the anterior upper portion of the L–5 level. Sanchez was off work for approximately two weeks and received workers' compensation benefits for this period of time. He was released to return to work at "full duty" on January 28, 1991.

On August 28, 1991, Sanchez was laid off work, along with approximately thirty-five other Blue Bird employees. From the time of his January 28 return to work until the layoff, Sanchez had not missed any work due to back pain nor did his medical records indicate he sought any further treatment for his injury. The testimony of his co-worker and supervisor indicated he did not mention any continued back pain to them after he returned to work on January 28.

Sanchez went to work for Fruehauf within a week of his layoff at Blue Bird. He testified he performed "very physical work" at Fruehauf. Sanchez saw a chiropractor for treatment for back pain in September 1991 after he experienced "complications" while working at Fruehauf. In December 1991, Sanchez again saw Dr. Readinger. Readinger believed Sanchez had lower back pain with some symptoms suggestive of a possible herniated lumbar disc. He recommended Sanchez be seen by an orthopedic specialist.

In April 1992, Sanchez was examined by Dr. Hart. Hart concluded Sanchez's chronic low back pain was work-related. An MRI indicated Sanchez had a large central annular protrusion at the L4–5 level. On August 5, 1992, Dr. Hart wrote to Sanchez's attorney and gave his opinion that Sanchez had a seven percent impairment due to his back condition.

Dr. Hart's medical records indicate Sanchez had no history of low back pain prior to his January 8, 1991 fall. However, Sanchez testified before the deputy commissioner he had been treated by a chiropractor in 1990 for problems with his right hip. He also admitted he had been injured in 1985 when he was kicked in his right hip. Dr. Hart's records do not indicate he was aware of these prior problems.

Following a February 1993 arbitration hearing, the deputy industrial commissioner found Sanchez's disability was related to his work injury at Blue Bird. The deputy commissioner awarded Sanchez medical expenses, permanent partial disability for 250

weeks, and healing period benefits from August 29, 1991 through July 9, 1992.

Blue Bird appealed. The industrial commissioner determined Sanchez had not presented reliable or sufficient medical evidence to prove his January 8, 1991 work injury caused him any disability after the termination of his employment on August 28, 1991, and reversed the deputy commissioner's decision. Sanchez filed a petition for judicial review. The district court found substantial evidence supported the industrial commissioner's decision and affirmed.

We review decisions of the industrial commissioner for errors of law and do not exercise de novo review. *Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995). When we review findings of the industrial commissioner, those findings carry the effect of a jury verdict. *Id.* We will reverse an agency's findings only if, after reviewing the record as a whole, we determine substantial evidence does not support them. *Id.* Evidence is substantial if a reasonable mind would accept it as adequate to reach the conclusion at issue. *Id.*

The mere fact we could draw inconsistent conclusions from the same evidence does not mean substantial evidence does not support the commissioner's determinations. *Id.* The ultimate question is not whether the evidence supports a different finding, but whether it supports the findings the commissioner actually made. *Id.*

The claimant has the burden of proving by a preponderance of the evidence the disability on which he now bases his claim is causally related to injuries arising out of and in the course of his employment. *Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 66 (Iowa App.1991). A possibility of causation is not sufficient; a probability is necessary. *See Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 297 (Iowa 1974). The question of causal connection is essentially within the domain of expert testimony. *Lithcote Co.*, 471 N.W.2d at 66. However, the weight to be given the expert opinion is for the agency as fact finder. Expert opinion testimony, even if uncontroverted, may be accepted or rejected in whole or in part by the trier of fact. *Id.*

The record reveals Sanchez was released to return to "full duty" on January 28, 1991. He did not seek any further treatment for back pain or mention any continued back pain while employed at Blue Bird. It was only after he began work at Fruehauf, and in his own words "started having complications," that Sanchez again consulted a doctor for the treatment of back pain. After working at Fruehauf, Sanchez worked at Lomont Molding for three to four months. He found that job to be "too physical" and, at the time of the arbitration hearing, was working in a light-duty job as an inspector.

Sanchez's credibility was very questionable. He had previously had a doctor falsify a report and claim an auto accident had occurred so he could be excused from work. He later misled a second doctor by allowing that doctor to believe the false report was accurate.

The veracity of Sanchez's claims of a continuing back injury are also brought into doubt by virtue of his conduct in this case. He appears to have taken steps to position himself to pursue a back injury claim only after he learned he would be laid off at Blue Bird. He sought no medical treatment nor did he mention any back problems after he returned to work in January. He missed no further work because of back problems. Yet, in August, after he knew layoffs were pending and he would no longer be employed at Blue Bird, he contacted his chiropractor, Dr. Brockman, on August 23, 1991, to let him know of his earlier injury and to inform him his attorney might be in contact. He did not attempt to make an appointment with Brockman at that time or to seek any treatment for his alleged injury.

The only medical evidence of causation linking Sanchez's condition with his January 8 injury is a one-line statement in Dr. Hart's notes, "IMPRESSION: Chronic low back pain, work related." The value of Dr. Hart's opinion was undermined by the fact he was not given a full and accurate medical or work history for Sanchez. Sanchez misled the doctor to believe he had been in an auto accident as reflected in the false medical report. Dr. Hart's records do not contain

Sanchez's history of hip problems which he had incurred prior to the January 8 injury to his hip and back. Finally, there is no evidence Dr. Hart knew of the "complications" Sanchez had after he had been terminated at Blue Bird and commenced doing "very physical work" at Fruehauf.

In order for Sanchez to prevail, he must prove the evidence was uncontradicted and reasonable minds could not draw different inferences. *See Riley v. Oscar Mayer Foods Corp.*, 532 N.W.2d 489, 491 (Iowa App. 1995). Sanchez cannot meet this burden. His claim that his present bulging disc was caused by his January 8, 1991, fall is a disputed issue. Dr. Hart's opinion that the injury was work-related was not a fully-informed opinion. Substantial evidence supported the findings of the industrial commissioner and we affirm.

**AFFIRMED.**