Rebecca FRYE, Surviving Spouse of Robert Frye, Deceased, Petitioner–Appellant,

v.

SMITH–DOYLE CONTRACTORS, Employer, and United States Fidelity & Guaranty Co., Insurance Carrier, Respondents–Appellees.

No. 96–0217.

Court of Appeals of Iowa.

June 26, 1997.

Jeffrey A. Smith and Harold B. Heslinga of Heslinga, Heslinga & Dixon, Oskaloosa, for appellant.

Patrick J. McNulty of Grefe & Sidney, P.L.C., Des Moines, for appellees.

Considered by HABHAB, C.J., and SACKETT and CADY, JJ.

HABHAB, Chief Judge.

On May 3, 1993, Robert Frye jumped to his death from a bridge into the Des Moines River. He was survived by his wife Rebecca and two minor children. The record reveals Robert had a long history of depression and substance abuse. Further, he had been incarcerated about half the time since his graduation from high school. He had a very limited work history. Prior to receiving workers' compensation benefits, his annual income was never more than a few hundred dollars per year.

On September 24, 1990, Robert suffered an injury to his back while at work at appellee Smith–Doyle Contractors. The record reveals he was stepping out of a trailer when the incident occurred. He was treated and diagnosed with herniated lumbar discs. He underwent surgery with little success. Subsequently, Robert was seen by a number of physicians and underwent a series of treatments which included prescription medications and physical therapy. He was awarded workers' compensation and was paid a total of 78.571 weeks of industrial disability benefits, an amount equivalent to a 15.714 percent industrial disability to the body as a whole. These benefits ceased in January 1993.

At the time of Robert's death, the workers' compensation proceedings were yet pending. After his death, Rebecca Frye, Robert's spouse, amended Robert's pending claim for additional workers' compensation benefits to also seek death benefits. After a hearing, a deputy industrial commissioner awarded permanent disability benefits. The deputy also awarded death benefits, concluding Robert's lack of recovery from his work injury aggravated his pre-existing depressive tendencies and caused his suicide.

Smith-Doyle appealed to the industrial commissioner. The commissioner confirmed the award of permanent disability benefits but reversed the award of death benefits, finding Rebecca failed to show Robert's work injury was a substantial factor that aggravated his depression and caused his suicide.

Rebecca sought judicial review in the district court. The court affirmed the commissioner's decision. It concluded the commissioner had applied the correct legal standard and substantial evidence supported the commissioner's decision. Rebecca now appeals.

■ Judicial review of the actions of an administrative agency is governed by the standards of Iowa Code section 17A.19(8). *Robbennolt v. Snap–On Tools Corp.*, 555 N.W.2d 229, 233 (Iowa 1996). The court acts in an appellate capacity by reviewing the agency's decision solely to correct any errors of law. *Id.* We do not exercise de novo review. *Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995).

The findings of the industrial commissioner are akin to a jury verdict, and we broadly apply them to uphold the commissioner's decision. *Second Injury Fund v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994). We will reverse an agency's findings only if, after reviewing the record as a whole, we determine substantial evidence does not support them. *Terwilliger*, 529 N.W.2d at 271.

■ Substantial evidence is not absent simply because it is possible to draw different conclusions from the same evidence. *Riley v. Oscar Mayer Foods Corp.*, 532 N.W.2d 489, 491 (Iowa App.1995). Our focus is whether the evidence is sufficient to support the decision made, not whether it is sufficient to support the decision not made. *Id.* A reviewing court may interfere with the agency's findings only if the evidence is un-

contradicted and reasonable minds could not draw different inferences. *Id.*

In *Kostelac v. Feldman's Inc.*, 497 N.W.2d 853 (Iowa 1993), our supreme court determined under what standards suicide will trigger survivors' benefits under our workers' compensation law. The court found:

> [W]e now join the majority of jurisdictions who permit recovery of workers' compensation benefits upon proof of a chain of causation directly linking an employment injury to a worker's "loss of normal judgment and domination by a disturbance of the mind, causing the suicide."
>
> Under either the *Schofield* [*v. White*, 250 Iowa 571, 95 N.W.2d 40 (1959)] standard or the chain-of-causation rule we adopt today, however, the suicide must be traced directly to some injury arising out of and in the course of employment.

*Id.* at 857 (citations omitted).

■ The burden rests upon Rebecca to show by a preponderance of evidence that the work-related injury caused the depression which led to Robert's suicide. *See id.* at 856. A possibility of causation is not sufficient; a probability is necessary. *See id.; and see Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 297 (Iowa 1974).

Dr. Rose and Dr. Gallagher both gave testimony in this matter.[1] Both seemingly agreed Robert's suicide was a result of his depression. However, Dr. Rose opined Robert's back injury caused the depression resulting in his suicide. Dr. Gallagher concluded Robert's depression was caused by a multitude of factors. He stated it was possible one of these factors may have been his back injury. Although he suggested the back injury was an aggravating factor, he explained it was not necessarily the causal factor. He noted Robert had a long history of depression prior to the injury at Smith–Doyle and could not state with a reasonable degree of medical certainty that prior injury was a probable cause of Robert's depression and ultimate suicide.

■ The question of causal connection is essentially within the domain of expert testimony. *Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 66 (Iowa App.1991). The weight to be given the expert opinion is for the agency as fact finder to determine. Expert opinion testimony, even if uncontroverted, may be accepted or rejected in whole or in part by the trier of fact. *Id.*

In the case of a conflict in the evidence, the court is not free to interfere with the commissioner's findings. *Schreckengast v. Hammermills, Inc.*, 369 N.W.2d 809, 811 (Iowa 1985).

The industrial commissioner relied on the opinion of Dr. Gallagher in reversing the award of death benefits. He noted Dr. Gallagher had given consideration to a large number of documents regarding Robert's psychological history prior to the injury. He found Dr. Rose did not indicate he had considered this history in arriving at his conclusion the injury was the cause of the depression which resulted in Robert's suicide.

As we stated in *Riley:*

> A reviewing court may interfere with the agency's findings only if the evidence is uncontradicted and reasonable minds could not draw different inferences. Legal error is present under the substantial evidence analysis when an agency reaches a conclusion based on uncontroverted evidence which is contrary to the conclusion reasonable minds would reach. If evidence is in conflict, however, the reviewing court has no room to interfere.

*Riley*, 532 N.W.2d at 491–92.

After careful review of the record, we find there is substantial evidence supporting the findings of the industrial commissioner. Further, we find substantial evidence supporting the findings of the industrial commissioner that Rebecca has not met her burden of showing the work-related injury was a substantial factor in bringing about Robert's suicide. We affirm the decision of the district court.

**AFFIRMED.**

---

1. We note that while Dr. Rose did not testify at the hearing, his deposition was admitted.