# IN THE COURT OF APPEALS OF IOWA

No. 22-1000
Filed May 24, 2023

**BRIAN BARRY,**
       Plaintiff-Appellant,

**vs.**

**JOHN DEERE DUBUQUE WORKS OF DEERE & COMPANY,**
       Defendant-Appellee.
_____

       Appeal from the Iowa District Court for Polk County, Heather L. Lauber,

Judge.


       Brian Barry appeals from judicial review affirming the denial of his review-

reopening petition before the Iowa Workers' Compensation Commissioner.

**AFFIRMED.**


       Thomas M. Wertz and Mindi M. Vervaecke of Wertz Law Firm, Cedar

Rapids, for appellant.

       Dirk J. Hamel of Gilloon, Wright & Hamel, P.C., Dubuque, for appellee.


       Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

Brian Barry appeals from a judicial-review proceeding affirming denial of a review-reopening petition before the Iowa Workers' Compensation Commissioner. After reviewing the legal questions presented and affording appropriate deference to the commissioner's factual findings, we affirm.

## I.      Background Facts and Proceedings

This appeal relates to Barry's attempt to reopen an award from a 2017 arbitration decision.  During the arbitration hearing, Barry testified he developed carpal tunnel syndrome while working for John Deere Dubuque Works of Deere & Co., leading to surgery and ongoing difficulty with "gripping, grasping, pushing, [and] pulling."  In the arbitration decision, a deputy workers' compensation commissioner found Barry sustained a work-related injury resulting in bilateral injuries to both arms and causing permanent partial disability of 11% to the body as a whole.  The deputy relied on the report and disability rating of Dr. Robin Sassman, who opined: "At first glance, this number appears high; however, given that [Barry] still has significant residual symptoms even after surgery, and it has impacted both of his upper extremities, this appears reasonable."

In 2018, Barry saw multiple physicians who documented his symptoms and recommended he continue to work without restrictions.  Barry first reported he was able to do his job without restrictions but with pain.  Toward the middle of 2018, Barry reported less pain but now had a work restriction.  Barry reported the primary pain during this time was in his shoulders, which caused him to wake up five times per night.  By September 2018, Barry changed jobs within his employer and reported improvement in the use of his hands with an increased range of motion.

But one month later, Barry reported to a different physician that he had tingling in his hands, and an MRI showed problems with his shoulders. Barry was cleared to return to work without additional restrictions.

From December 2018 to February 2020, Barry began to see a nurse practitioner for the shoulder pain. During this time, Barry reported tingling in his hands and fingers, along with the shoulder issues. By March 2020, Barry reported to another physician that his wrists "do ok" if he follows his restrictions but they swell up if he does too much.

In 2019, Barry filed a review-reopening petition alleging his bilateral carpal tunnel had worsened since the original award. In October 2020, Barry saw Dr. Stanley Mathew for an independent medical evaluation. Dr. Mathew noted Barry "rates his discomfort at about a 6/10 most significantly in his shoulders, wrists, forearms, and hands." Dr. Mathew diagnosed Barry with "[b]ilateral carpal tunnel syndrome," "[s]tatus post bilateral carpal tunnel decompression surgery," "[b]ilateral forearm tendinitis," "[b]ilateral multidigit trigger finger," "[b]ilateral rotator cuff tendonitis," "[b]ilateral upper extremity weakness," and "[c]hronic pain in [b]ilateral upper extremities." Dr. Mathew noted that "Barry continues to have worsening forearm pain, stiffness, weakness, numbness, and tingling that have progressively gotten worse" since the 2017 arbitration decision. Using Table 16-18 of the American Medical Association's Guides to the Evaluation of Permanent Impairment (5th Ed.) [hereinafter, "AMA Guides"], Dr. Mathew rated Barry's permanent impairment at "a 10% upper extremity rating to each of his elbows, a 15% upper extremity impairment to his wrists, and a 15% impairment rating as a result of loss of function of his finger joints." Of these impairments, Dr. Mathew

opined that Barry's shoulder complaints were new and separate from the wrist, hand, finger, and forearm diagnoses. Dr. Mathew also reported that Barry's "chronic pain and weakness" were not adequately considered by the AMA Guides, and he added further permanent restrictions.

A contested review-reopening hearing was held, during which Barry testified he was living in Florida and not working due the COVID-19 pandemic; he had neither formally retired nor made definite plans to return to work. Another deputy workers' compensation commissioner denied the petition, finding that Barry had not met his burden to prove a change in the condition of his work-related injury. The deputy commissioner specifically found the report of Barry's expert, Dr. Mathew, not credible in part because it was based on "incorrect" sections of the AMA Guides.

Barry appealed the deputy's decision to the Workers' Compensation Commissioner, who affirmed and adopted the deputy's decision in its entirety. Barry then petitioned for judicial review, and the district court affirmed. Barry appealed to the supreme court, which transferred the case to our court.

## II. Standard of Review

This appeal comes before us under Iowa Code chapter 17A, the Iowa Administrative Procedure Act. *See* Iowa Code § 86.26 (2019). Under chapter 17A, we may only interfere with an agency decision if it is erroneous under one of the grounds enumerated in the statute and a party's substantial rights have been prejudiced. *Id.* § 17A.19(10). For example, we must reverse if the agency's decision was "unreasonable, arbitrary, capricious, or an abuse of discretion." *Id.* § 17A.19(10)(n).

To the extent that our review turns on interpretation of the workers' compensation statute, interpretation has not been vested with the agency and we do not defer to the agency's legal conclusions. *See id.* § 17A.19(10)(c), (11)(b); *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 769 (Iowa 2016).

Our review of the facts is limited to review for substantial evidence. *See* Iowa Code § 17A.19(10)(f); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006). "Substantial evidence" is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(3).

### III.    Discussion

Barry filed a review-reopening petition under Iowa Code section 86.14, which authorizes the commissioner "to 'reopen an award for payments or agreement for settlement . . . [to inquire] into whether or not the condition of the employee warrants an end to, diminishment of, or increase of compensation so awarded or agreed upon.'" *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 391 (Iowa 2009) (alterations in original) (quoting Iowa Code § 86.14(2)). When a claimant seeks an increase in benefits, the claimant must establish "by a preponderance of the evidence that, subsequent to the date of the award under review, he or she has suffered an impairment or lessening of earning capacity proximately caused by the original injury." *E.N.T. Assocs. v. Collentine*, 525 N.W.2d 827, 829 (Iowa 1994).

Barry challenges the commissioner's rejection of his expert's opinion as an abuse of discretion. He also challenges whether sufficient evidence supports the commissioner's decision. We affirm.

## A. Weight Assigned to Barry's Expert

Barry's first contention is that the commissioner abused his discretion in rejecting Dr. Mathew's medical opinion, which Barry calls "the only expert medical opinion in the record." Barry's characterization of the record is not quite correct, as the evidence in the review-reopening proceeding included extensive medical records as well as the opinions of Barry's own expert in the original proceeding and other treating providers. But even if Dr. Mathew were the only expert before the agency, "[e]xpert opinion testimony, even if uncontroverted, may be accepted or rejected in whole or in part by the trier of fact." *Sanchez v. Blue Bird Midwest*, 554 N.W.2d 283, 285 (Iowa Ct. App. 1996).

Looking at Barry's claim more broadly, we affirm the district court's judicial-review ruling, as "credibility determinations in workers' compensation claims are within the domain of the commissioner as trier of fact." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 847 (Iowa 2011). In finding Dr. Mathew's report not "persuasive," the commissioner found that Dr. Mathew's opinion lacked support based on objective evidence, that Barry's descriptions of his injuries at both the original and review-reopening hearings were quite similar, that Barry "sought little treatment" for injuries that he claimed were worsening (particularly when contrasted with the prompt medical attention he sought for his shoulders), and that Dr. Mathew misapplied the AMA Guides. All of these considerations are proper

for a fact-finder to consider when determining what weight to assign evidence. *See id.* We find no abuse of discretion in rejecting Dr. Mathew's expert opinion.

## B. Agency Consideration of the AMA Guides

Next, Barry challenges the commissioner's reference to the AMA Guides when weighing his expert's credibility. Iowa Code section 85.34(2)(x) provides:

> In all cases of permanent partial disability described in paragraphs "a" through "u", or paragraph "v" when determining functional disability and not loss of earning capacity, the extent of loss or percentage of permanent impairment shall be determined solely by utilizing the [AMA Guides], as adopted by the workers' compensation commissioner by rule pursuant to chapter 17A. Lay testimony or agency expertise shall not be utilized in determining loss or percentage of permanent impairment pursuant to paragraphs "a" through "u", or paragraph "v" when determining functional disability and not loss of earning capacity.

Barry contends this language prohibits the commissioner from finding Dr. Mathew misapplied the AMA Guides when weighing credibility and that the commissioner abused his discretion by using the AMA Guides. We disagree.

We observe that the commissioner's finding that Dr. Mathew applied "an incorrect section of the [AMA] Guides" was made in the context of Dr. Sassman's conflicting application of the AMA Guides. Dr. Sassman provided a detailed explanation for how he used the AMA Guides to calculate that Barry's carpal tunnel syndrome resulted in 11% whole person impairment, using the section that specifically discusses carpal tunnel syndrome and tracing the impairment ratings from Table 16-15 to Table 16-10. By contrast, Dr. Mathew opined as to upper extremity impairment ratings of 10% for each elbow, 15% for each wrist, and 15% for finger joints—all with little explanation beyond noting he relied on Table 16-18 located in Section 16.7 of the AMA Guides. Even Barry's appellate brief provides

little in the way of explanation. Overall, we find hardly any support for Dr. Mathew's reliance on Section 16.7, as the section itself indicates it should only be used for hand and upper extremity "[c]onditions not previously described" in the AMA Guides. Faced with this irreconcilable difference in how the experts applied the AMA Guides, the commissioner was authorized to evaluate the experts' competing rating methods and conclude that Dr. Mathew "based his rating off an incorrect section of the [AMA] Guides" when weighing witness credibility. *See Pease*, 807 N.W.2d at 847.

Contrary to Barry's claim, the commissioner weighed expert credibility without running afoul of the statutory prohibition on determining "the extent of loss or percentage of permanent impairment." *See* Iowa Code § 85.34(2)(x). The commissioner did not abuse his discretion.

### C. Sufficiency of the Evidence

Barry's final challenge is to the commissioner's conclusion that he did not carry his burden to prove a change in his condition. We find the commissioner's decision was supported by substantial evidence. At the time of the initial award, Dr. Sassman opined that Barry's 11% permanent impairment rating appeared "high" but was "reasonable" since Barry "has significant residual symptoms even after surgery" that have "impacted both of his upper extremities." In the review-reopening proceeding, the commissioner correctly summarized the evidence, noting the lack of objective support for Barry's claim, that the subjective evidence appeared to describe the same or very similar limitations as the original hearing, and that much of the additional treatment sought by Barry related to his shoulders rather than the original carpal tunnel injury. The commissioner also properly

exercised his discretion in rejecting Dr. Mathew's testimony for the reasons set forth earlier in this opinion. Last, while Barry presented evidence about his new shoulder injury, new injuries cannot increase the original impairment rating and are correctly pursued in a separate proceeding. *See id.* § 86.14(2); *Blacksmith v. All-Am., Inc.*, 290 N.W.2d 348, 352 (Iowa 1980).

## IV.    Disposition.

The commissioner did not abuse his discretion in rejecting the opinion of Barry's expert or in evaluating the expert's use of the AMA Guides when weighing credibility. Substantial evidence supports the commissioner's conclusion that Barry failed to carry his burden to prove his current condition warranted reopening his earlier disability award.

**AFFIRMED.**