Judith **NOBLE**, Appellant,

v.

**LAMONI PRODUCTS and Liberty Mutual Insurance Company,
Appellees.**

No. 93–148.

Supreme Court of Iowa.

Feb. 23, 1994.

Steven C. Jayne, Des Moines, for appellant.

Joseph A. Happe of Jones, Hoffmann, Huber, Kelley, Book & Cortese, Des Moines, for appellees.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This appeal by an injured worker challenges the industrial commissioner's finding that carpal tunnel syndrome is an occupational injury, not an occupational disease, and therefore compensable under Iowa Code chapter 85 (1991). On judicial review, the district court upheld the commissioner's ruling. We affirm.

The facts are not disputed. Appellant Judith Noble began working for appellee Lamoni Products in 1983. In 1986 she was transferred from quality control to the production line, building cross-body electrical harnesses for automobiles. Her duties entailed holding a collection of wires known as the "tail" with one hand, and with the other hand flipping a roll of tape over and under the wires to create a continuous roll. The task required repeated flexion and extension of her wrists. Excluding breaks and lunch, she completed one "tail" every seventy seconds during her eight-hour work day.

After three to four weeks on the job, Noble reported numbness and a loss of feeling in her hands. Her supervisor then assigned her to a job "blocking ripcords." This involved inserting a terminal into a connector with a "push, click, tug" motion to ensure that the connector was seated properly. The motion was repeated approximately 3500 times per day. Again Noble reported numbness, pain, and gradual loss of strength in her hands.

In December 1986, Noble told her doctor about the numbness and pain she was experiencing in her hands. He referred her to a specialist who diagnosed her condition as "overuse syndrome" and recommended that the condition would improve if she rotated to different positions within the plant. She remained, however, at her job blocking ripcords.

On July 2, 1987, Noble and about twenty other employees were laid off their jobs at Lamoni. Because the numbness in her hands persisted after the layoff, she was referred to yet another doctor who diagnosed her condition as bilateral carpal tunnel syn-

drome.[1] He recommended surgery. The doctor also determined that the carpal tunnel syndrome was work-related and that if Noble continued blocking ripcords, a one-in-four chance existed that her symptoms would recur. Noble underwent surgery for decompression of the right carpal and ulnar tunnels in October 1987, and the left carpal tunnel in December 1987. Although she was released to return to work in January 1988, no position was extended to her. The plant closed later that year.

Noble filed an arbitration petition with the Iowa industrial commissioner, alleging that her bilateral carpal tunnel syndrome was an occupational disease entitling her to compensation under Iowa Code chapter 85A. Following hearing, a deputy found the evidence insufficient to sustain Noble's claim of occupational disease but concluded that she had suffered a work-related injury. The deputy awarded Noble permanent partial disability benefits for injuries to both hands (resulting in a four percent functional impairment to the body as a whole) in accordance with Iowa Code section 85.34(2)(s).

Noble appealed to the industrial commissioner, who sustained the deputy's order. Rejecting Noble's argument that the syndrome was a disease process, the commissioner found under this record that Noble suffered a series of microtraumas to her hands over time. Such a traumatic cumulative injury, he concluded, is compensable under Iowa Code chapter 85, not 85A. The district court affirmed on judicial review and this appeal followed.

■ I. Our review is for the correction of errors at law. *Suluki v. Employment Appeal Bd.*, 503 N.W.2d 402, 404 (Iowa 1993). The industrial commissioner's interpretation of the workers' compensation statutes is entitled to deference, but the final interpretation of the law rests with this court. *Teel v. McCord*, 394 N.W.2d 405, 407 (Iowa 1986). Our task is to determine whether the district court, acting in its appellate capacity in these judicial review proceedings, applied the law correctly. *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 281 (Iowa 1991).

■ II. Iowa Code chapter 85, the Workers' Compensation Act, authorizes compensation to employees who sustain personal injury arising out of their employment. *See* Iowa Code § 85.3(1). The act prescribes coverage for bodily injury, health impairment, or disease resulting from trauma-induced injury. *Almquist v. Shenandoah Nurseries*, 218 Iowa 724, 732, 254 N.W. 35, 39 (1934); Iowa Code § 85.61(4)(b). Prior to 1947, an employee suffering from an occupational disease was not entitled to statutory relief. *Almquist*, 218 Iowa at 731, 254 N.W. at 38. In 1947, however, the legislature enacted the Occupational Disease Law, Iowa Code ch. 85A, to compensate victims of disease resulting from the *nature* of employment rather than from traumatic injury. *See generally* Larry L. Shepler, *Occupational Disease Claims*, 30 Drake L.Rev. 841, 841–42 (1980–81).

Until 1973, the Occupational Disease Law limited its coverage to a schedule of specific diseases. Of the seventeen enumerated conditions, eight were types of poisoning; two involved skin diseases from chemical reactions; two were diseases resulting from handling infected animals and their carcasses; two involved exposure to radiant energy and radioactive materials; and one involved exposure to chemical dust. *See* Iowa Code § 85A.9 (1973). Recovery was also permitted for "bursitis, synovitis or tenosynovitis" resulting from "any process or occupation

---

1. We accept the following definition of carpal tunnel syndrome cited by the industrial commissioner:

> The most common of the nerve entrapment syndromes, carpal tunnel syndrome results from compression of the median nerve at the wrist, within the carpal tunnel, through which it passes along with blood vessels, and flexor tendons to the fingers and thumb. This compression neuropathy causes sensory and motor changes in the median distribution of the hand. Assembly-line workers and packers and persons who repeatedly use poorly designed tools are most likely to develop this disorder. Any strenuous use of the hands—sustained grasping, twisting, or flexing—aggravates this condition.

> *Diseases* 555 (Nurse's Reference Library 2d ed. 1987).

involving continued or repeated pressure on the parts affected." *Id.*[2]

The legislature repealed the disease schedule in 1973. 1973 Iowa Acts ch. 144, § 30. Left remaining was the general definition of occupational disease which, by its terms, limits the law's application to

> only those diseases which arise out of and in the course of the employee's employment. Such diseases shall have a direct causal connection with the employment and must have followed as a natural incident thereto from injurious exposure occasioned by the nature of the employment. Such disease must be incidental to the character of the business, occupation or process in which the employee was employed and not independent of the employment. Such disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have resulted from that source as an incident and rational consequence. A disease which follows from a hazard to which an employee has or would have been equally exposed outside of said occupation is not compensable as an occupational disease.

Iowa Code § 85A.8. In *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 190 (Iowa 1980), this court observed that repeal of the schedule potentially broadened the scope of occupational diseases compensable under chapter 85A. At the same time, other legislation narrowed the definition of "injury" to exclude occupational diseases. *Id.;* 1973 Iowa Acts ch. 144, § 21 (now codified at Iowa Code § 85.61(4)(b)). A further statutory prescription prevents duplicate recovery for injury and occupational disease:

> No compensation shall be payable under this chapter for any condition of physical or mental ill-being, disability, disablement, or death for which compensation is recoverable on account of injury under the workers' compensation law.

Iowa Code § 85A.14.

Compensation for occupational disease also requires proof of disability. Iowa Code § 85A.5. "Disablement" is defined in the act as "the event or condition where an employee becomes actually incapacitated from performing the employee's work or from earning equal wages in other suitable employment because of an occupational disease...." Iowa Code § 85A.4; *see Doerfer Div. of CCA v. Nicol,* 359 N.W.2d 428, 438 (Iowa 1984) (compensation under chapter 85A "not awarded for injury, but for disability").

III. The deputy industrial commissioner's decision to deny Noble occupational disease benefits rested on two findings: (1) that she failed to tender medical evidence that carpal tunnel syndrome is a disease, and (2) that the record lacked evidence of disablement as that term is defined in Iowa Code section 85A.4. On review by the industrial commissioner and the district court, and now on appeal, Noble counters those findings with three arguments. First, she claims entitlement—as a matter of law—to coverage under the "broadened" provisions of the amended occupational disease law because carpal tunnel syndrome is related to bursitis, synovitis, and tenosynovitis, conditions formerly recognized as diseases under the statute. Second, she claims that repetitive motion or "overuse" syndromes should qualify as occupational diseases as a matter of law. And, third, she contends the agency's decision contravenes the objective of liberally interpreting these statutes to benefit workers. We shall consider the arguments briefly in turn.

A. The industrial commissioner concluded that although the 1973 repeal of the disease schedule may have broadened the definition of occupational disease, *see McSpadden,* 288 N.W.2d at 190, it does not follow automatically that carpal tunnel syndrome is compensable under chapter 85A. We agree. First, the record contains no medical evidence that carpal tunnel syndrome is related to or a variation of the formerly scheduled conditions. Assuming for the sake of argument that it is, we share the commissioner's skepticism whether conditions such as bursitis and tenosynovitis would be treated as dis-

---

**2.** Bursitis is commonly defined as an inflammation of the shoulder or elbow. Webster's Ninth New Collegiate Dictionary 189 (1986); synovitis is "inflammation of a synovial [tendon sheath] membrane," *id.* at 1198; tenosynovitis is "inflammation of a tendon sheath." *Id.* at 1215.

eases under the current statute. As noted by the commissioner, compensation for these conditions under section 85A.9, rather than under chapter 85, occurred at a time when cumulative trauma disorders were not as clearly compensable as injuries as they are today. It was not until 1985 that this court recognized the "cumulative injury rule" for application by the commissioner "in factually appropriate cases." *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 373 (Iowa 1985). Subsequent decisions of the industrial commissioner have treated carpal tunnel syndrome as an injury. *See, e.g., Himshoot v. Montezuma Mfg.*, Iowa Indus. Comm'r, Nos. 672778, 738235 (April 15, 1988) (bilateral carpal tunnel syndrome is injury and not occupational disease); *Peters v. Lamoni Auto. Assemblies, Inc.*, Iowa Indus. Comm'r, No. 809203 (March 31, 1989) (same). Moreover, these awards are consistent with decisions of other states having workers' compensation and occupational disease laws comparable to our own. *See, e.g., Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122, 1127 (Ind.App.1993) (carpal tunnel syndrome remediable as injury under workers' compensation statute, not compensable as occupational disease); *Schlup v. Auburn Needleworks, Inc.*, 239 Neb. 854, 860, 479 N.W.2d 440, 445 (1992) (compensability of condition resulting from cumulative effects of repeated work-related trauma tested under statutory definition of accidental injury); *Luttrell v. Industrial Comm'n*, 154 Ill.App.3d 943, 956, 107 Ill.Dec. 620, 629, 507 N.E.2d 533, 542 (1987) (claimant failed to establish carpal tunnel syndrome as disease within meaning of Occupational Diseases Act). Contrary holdings appear limited to jurisdictions whose more restrictive workers' compensation statutes limit recovery for cumulative injury or require proof of "accident." *See, e.g., Lettering Unlimited v. Guy*, 321 Md. 305, 311, 582 A.2d 996, 998–99 (1990) (usual job-related repetitive trauma cannot predicate claim for accidental injury but will support occupational disease claim); *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990) (occupational disease statute requires claimant to demonstrate exposure to hazard of "non-acute" occupational disease for sixty days before liability attaches); *see generally* Jay M. Zitter, Annotation, *Workers' Compensation: Recovery for Carpal Tunnel Syndrome*, 14 A.L.R.5th 1 (1993).

The assignment of error is without merit.

■ B. In *McSpadden v. Big Ben Coal Co.*, this court determined that to qualify for benefits under chapter 85A, a claimant must prove two things: first, that the disease is causally related to the exposure to harmful conditions of employment; and second, that those harmful conditions are more prevalent in the employment concerned than in everyday life. *McSpadden*, 288 N.W.2d at 190. Noble argues on appeal that she tendered sufficient proof of both criteria to sustain her claim. Thus, she contends, the commissioner erred as a matter of law in failing to award her benefits for occupational disease. We do not agree.

The commissioner wisely observed that the statutory criteria upon which Noble relies *presume* the existence of a *disease*. The factors cited relate solely to proof of causation. *See id.; Duvall*, 621 N.E.2d at 1125 (statutory definition of occupational disease incomplete because it focuses on causation and "assumes that the employee suffers from a disease"). Were threshold proof of disease not a prerequisite to recovery under chapter 85A, many disabilities arising from clearly traumatic injuries would also meet *McSpadden*'s requirements. Such a circumstance would contravene the clear intent of sections 85A.14 and 85.61(4)(b) to make recovery under the two chapters mutually exclusive.

Thus the correctness of the commissioner's decision turns on the meaning of "disease" as that term is used in the statutory scheme. The term is not defined in chapter 85A or chapter 85. When statutory terms are left undefined, we presume the legislature intends that they be given their common, ordinary meaning. *Schafer v. Cocklin*, 504 N.W.2d 454, 455 (Iowa 1993); *see* Iowa Code § 4.1(2) (nontechnical statutory words shall be construed according to context and approved usage).

The industrial commissioner cited several dictionary and medical definitions of "disease" and concluded that a disease is commonly understood to result when the body is

invaded by outside agents such as bacteria, virus, poison, toxin, or germs. None of the common definitions trace the cause of disease to trauma. *See, e.g.,* Webster's Ninth New Collegiate Dictionary 362 (1986) ("a condition of the living animal or plant body or of one of its parts that impairs the performance of a vital function: SICKNESS, MALADY"); Random House Dictionary of the English Language 564 (2d ed. 1987) ("a disordered or incorrectly functioning organ, part, structure, or system of the body resulting from the effect of genetic or developmental errors, infection, poisons, nutritional deficiency or imbalance, toxicity, or unfavorable environmental factors"); Mosby's Medical, Nursing, and Allied Health Dictionary 378 (3d ed. 1990) ("disease: 1. a condition of abnormal vital function involving any structure, part, or system of an organism. 2. a specific illness or disorder characterized by a recognizable set of signs and symptoms, attributable to heredity, infection, diet, or environment"). Because he found that Noble's carpal tunnel syndrome was caused "not by an invasion of her body by an outside agent but by external traumatic forces," the commissioner ruled that Noble's condition was properly characterized as an injury, not a disease.

The district court found the commissioner's reasoning sound and so do we. Our decision is fortified by persuasive rulings in neighboring jurisdictions. The Indiana Court of Appeals, for example, recently drew the following distinction between the terms "injury" and "disease" in workers' compensation statutes comparable to our own:

> The statutory definition describes an occupational disease in terms of a worker's "exposure" to conditions in the workplace.... The term "exposure" indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Worker's Compensation Act. [Plaintiff's] carpal tunnel syndrome did not result from exposure to workplace conditions at [the factory] but resulted from the hand and wrist mechanics associated with [plaintiff's] work on [the factory's] production line. Her carpal tunnel syndrome did not result

from where she worked but from the work she did.

*Duvall,* 621 N.E.2d at 1125. Similarly, the Illinois appellate court has observed that

> an "injury" is distinguished from a "disease" by virtue of the fact that an injury has its origin in a specific, identifiable trauma or physical occurrence or, in the case of repetitive trauma, a series of such occurrences. A disease, on the other hand, originates from a source that is neither traumatic nor physical....

*Luttrell,* 154 Ill.App.3d at 955, 107 Ill.Dec. at 628–29, 507 N.E.2d at 541–42; *see also Schlup,* 479 N.W.2d at 445–47 (carpal tunnel syndrome not occupational disease but work-related accident with gradual onset).

We find no error in the commissioner's characterization of Noble's condition as an injury, not a disease. The record supports his finding that her disorder resulted from repeated traumas to her wrist and hands. The commissioner was also careful to limit his decision to the facts before him. Mindful that carpal tunnel syndrome may also be associated with diseases such as diabetes, edema, and tuberculosis, his findings in this case turned on proof that the condition resulted from Noble's repetitive traumatic work activity. The record amply supports this conclusion and the district court's affirmance of it.

■ C. Finally, Noble asserts that these findings and conclusions contravene the rule favoring liberal construction of workers' compensation statutes to benefit workers. *See Teel,* 394 N.W.2d at 406. We disagree. As noted by the industrial commissioner, chapter 85 and chapter 85A differ both in procedural requirements and methods of compensation. The fact that a claimant's injury is compensated under chapter 85 or chapter 85A may benefit the injured worker in some cases and act to that worker's detriment in others. No ground for reversal appears.

**AFFIRMED.**