Larry R. GATES, Appellant,

v.

**JOHN DEERE OTTUMWA WORKS, Appellee.**

No. 97–348.

Supreme Court of Iowa.

Dec. 23, 1998.

Dennis W. Emanuel of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for appellant.

David J. Hester and Gayla R. Harrison of Johnson, Hester, Walter & Harrison, L.L.P., Ottumwa, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal arises from an industrial commissioner's finding, affirmed on judicial review, that Larry Gates' workers' compensation claim is time barred by Iowa Code section 85.26 (1993). Gates argued before the district court, and urges on appeal, that the commissioner erroneously failed to consider theories of latent injury, aggravation of preexisting injury, or cumulative trauma

to extend the statutory deadline for claim filing. Finding no error, we affirm.

## I. Background Facts and Proceedings.

Larry Gates was employed by John Deere Ottumwa Works in 1973. During his eighteen years with the company, Gates worked mainly as a drill press operator. This job, along with a later position as a line tender, had Gates on his feet each day, repeatedly bending, twisting, and lifting to manage heavy materials on the factory's assembly line.

In 1985 Gates underwent back surgery for a herniated disc. Gates made no claim at that time, to either the surgeon or the company, that his back pain was work related. After a period of recuperation, he returned to work at John Deere.

Symptoms similar to those experienced by Gates in 1985 recurred in late 1987. Gates returned to Dr. Carlstrom, who had performed his earlier surgery. Dr. Carlstrom recommended—and Gates thereafter received—high dose epidural steroid injections to relieve the pain. The injections were given by an anesthesiologist then practicing in Ottumwa.

The steroid injections furnished only limited pain relief. During a follow-up examination in February 1988, Gates discussed with Dr. Carlstrom the work-related nature of his back pain, which was by then radiating down his right leg. He associated the pain with the bending and lifting required by his job as a drill press operator. On an admission form for Gates' subsequent hospitalization, Dr. Carlstrom observed that Gates "did well after the [April 1985] surgery until a few months ago with the onset of his pain beginning after doing some heavy work at work."

Gates underwent surgery for a second herniated disc in May 1988. He again missed several months of work at John Deere but made no claim for workers' compensation benefits. During a follow-up examination in July 1988, Gates reported continuing pain, not only in his back and leg, but in his hip. He returned to work under "light duty" restrictions.

Gates reported "more back pain" in early 1990, and in a December 1990 appointment with Dr. Carlstrom's partner, Dr. Boarini, complained of pain in his knees and legs. He told the physician he had not been without pain since January 1990.

Gates sought treatment from an orthopaedic surgeon, Donald Berg, in March 1991. Dr. Berg's examination revealed aseptic necrosis in Gates' hips. The disease process was so severe and advanced in the head of each femur that Gates was forced to undergo bilateral hip replacement. The nature of the impairment, and the lack of any identifiable trauma to Gates' hips, led the doctors to conclude the necrosis resulted from negligent administration of the steroid injections in 1988.

Gates' last day of work was March 21, 1991. He filed a petition for benefits with the industrial commissioner on January 20, 1993. The petition alleged cumulative trauma from Gates' work as a drill press operator, causing "bilateral hip impairment (aseptic necrosis) and back impairment (C4–6 herniated disc)." A later amendment alleged the hip joint necrosis resulted from improper treatment of a work-related back injury, aggravated by "[c]umulative trauma of the work actions and being on concrete." John Deere's answer raised, as an affirmative defense, the two-year limit on asserting claims under Iowa Code section 85.26.[1]

Following a contested hearing, a deputy industrial commissioner found Gates knew of his work-related back injury no later than February 1988, yet failed to file a claim until January 20, 1993. As for the diagnosis of aseptic necrosis in March 1991, the deputy determined the discovery rule could not save Gates' claim because his hip impairment arose out of treatment of his back injury, of

---

1. The statute provides, in pertinent part:
   An original proceeding for benefits under this chapter ... shall not be maintained in any contested case unless the proceeding is commenced within two years from the date of the occurrence of the injury for which benefits are claimed or, if weekly compensation benefits are paid under section 86.13, within three years from the date of the last payment of weekly compensation benefits.
   Iowa Code § 85.26(1).

which he was well aware. The deputy dismissed Gates' claim as untimely under section 85.26, a decision affirmed by the industrial commissioner on appeal and on judicial review by the district court. Gates then commenced this appeal in accordance with Iowa Code section 17A.20.

## II. Scope of Review.

■ Our review of an industrial commissioners decision is on error, not de novo. *Terwilliger v. Snap–On Tools Corp.,* 529 N.W.2d 267, 271 (Iowa 1995). We, like the district court, are bound by factual findings made by the commissioner so long as those findings enjoy substantial support in the record made before the agency. *Id.*

## III. Issues on Appeal.

It appears indisputable under this record that Gates knew of his back injury, and of its compensable nature, by February 1988. His discussion with Dr. Carlstrom of the seriousness of the impairment and its work-related character led to the prompt administration of steroid injections and, only three months later, surgery to repair a herniated disc. Yet Gates made no claim for benefits until January 1993, long after the two-year time bar of Iowa Code section 85.26. He urged before the district court, and now argues on appeal, that the industrial commissioner should have applied one of three theories—latent injury/discovery rule, aggravation of preexisting injury, or cumulative trauma—to extend the deadline in recognition of the fact that treatment of his back injury led to aseptic necrosis of his hips. We consider the theories briefly in turn.

■ A. *Latent injury/discovery rule.* Application of the discovery rule in the workers' compensation context means that the limitation period of section 85.26 does not begin to run until " 'the employee discover[s] or in the exercise of reasonable diligence should . . . discover[ ] the nature, seriousness and probable compensable character' of his injury or disease." *Ranney v. Parawax Co.,* 582 N.W.2d 152, 154 (Iowa 1998) (quoting

*Orr v. Lewis Cent. Sch. Dist.,* 298 N.W.2d 256, 261 (Iowa 1980)). Gates latches on to this principle to claim that the aseptic necrosis of his hips, first diagnosed in March 1991, was a pure latent injury triggering application of the discovery rule. John Deere counters that the discovery rule has no application here, at least insofar as any claim for workers' compensation is concerned,[2] because Gates' hip impairment relates directly to his work-related back injury sustained nearly five years before.

■ Our prior decisions plainly support John Deeres position. A pure latent injury case

> arises in one of three situations: a suit by a worker who contracts an occupational disease, a medical malpractice suit by a patient who discovers an injury long after the negligent medical treatment has been administered, or a product liability suit by a consumer of a drug or other medically related product who discovers a side effect from the use of the defendant's product. In each of the pure latent injury cases, the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred.

*LeBeau v. Dimig,* 446 N.W.2d 800, 802 (Iowa 1989) (citation omitted). Application of the discovery rule to the cases described in *LeBeau* is necessary to prevent the unfairness of charging a plaintiff with knowledge of facts which are inherently unknowable. *Id.*

By contrast, the case before us involves a cognizable, traumatic injury to Gates' back. The full extent of the injury did not immediately manifest itself, but to treat Gates' hip impairment as a separate injury would permit Gates to invoke multiple statutes of limitations for the same incident. We have rejected similar attempts by plaintiffs to split causes of action in *LeBeau v. Dimig* and *Borchard v. Anderson. LeBeau* involved a diagnosis of epilepsy stemming from what were thought to be minor head injuries sustained in an automobile accident nearly four years earlier. *LeBeau,* 446 N.W.2d at 801.

---

2. The parties do not discuss, and we need not consider, the applicability of the discovery rule to any claim Gates may have against the anesthesiologist who is alleged to have negligently administered the steroid injections.

*Borchard* involved a diagnosis of posttraumatic stress disorder related to domestic assault inflicted on the plaintiff many years earlier. *Borchard v. Anderson,* 542 N.W.2d 247, 248–49 (Iowa 1996). The plaintiffs in each case alleged unforeseen consequences stemming from events about which they were well aware. We refused to apply the discovery rule in such situations. Noting the potentially harsh results for plaintiffs in individual cases, we held the overriding public interest in predictability and finality in litigation compelled a rule requiring action by the plaintiff upon awareness of the occurrence of a traumatic event. *Id.* at 251; *LeBeau,* 446 N.W.2d at 802; *cf. Ranney,* 582 N.W.2d at 155–56 (statute of limitations does not begin running when plaintiff secures medical determination of causation but when plaintiff is on notice problem exists demanding investigation).

■ The question of when a claimant knew, or should have known, about the traumatic event and its work-related nature is a fact issue determinable by the industrial commissioner and binding on us if supported by substantial evidence in the record. *Dillinger v. City of Sioux City,* 368 N.W.2d 176, 182 (Iowa 1985); *Robinson v. Department of Transp.,* 296 N.W.2d 809, 812 (Iowa 1980). The record before us reveals that Gates was fully aware of the seriousness of his back injury, and its work-related and compensable nature, no later than February 1988. Although Gates' back injury eventually manifested itself as a hip impairment diagnosed in March 1991, our holdings in *LeBeau* and *Borchard* prevent Gates from splitting his cause of action to avail himself of the discovery rule, thereby extending the limitation period beyond that applicable to his back injury. The industrial commissioner and district court were correct in so ruling.

■ B. *Aggravation of preexisting injury.* Gates also claims the industrial commissioner erred in failing to conclude his aseptic necrosis condition was compensable as an aggravation of a preexisting injury. The premise for Gates' argument is somewhat difficult to discern from his brief. He first claims the record shows "the original injury status of 1988" was aggravated by the debili-

tating hip condition. He then seems to claim that the hip condition was further aggravated by standing on concrete, required by his work. This latter claim, however, is neither developed in the brief nor supported by the expert testimony in the record.

■ To the extent Gates rests his aggravation claim on his original back injury, it suffers from the same weakness as his discovery rule argument. It is the general rule that a worker who suffers a compensable injury may receive further compensation for aggravation occasioned by the injury's treatment. *Bradshaw v. Iowa Methodist Hosp.,* 251 Iowa 375, 386, 101 N.W.2d 167, 173–74 (1960). To be compensable, however, a claim for aggravation must relate to a viable claim for benefits. *See* Iowa Code § 85.26(1) (authorizing claim for additional benefits within three years if weekly benefits already being paid); § 85.26(2) (authorizing review of award upon timely commencement of review-reopening proceedings). By early 1988 Gates knew of his back injury and its compensable nature, yet he made no claim for benefits under section 85.26 until January 1993. He cites no authority for the proposition that aggravation damages caused by treatment of an otherwise noncompensable injury will revive the original time-barred claim. The assignment of error is without merit.

■ C. *Cumulative trauma.* Gates also claims the record supports a finding by the industrial commissioner that the aseptic necrosis of his hip joints developed over time due to persistent standing on concrete floors at the John Deere factory. The claim simply has no legal or factual basis in this record.

■ Gates correctly states that when a claimant sustains a cumulative trauma injury, the "occurrence" date for purposes of calculating the two-year statute of limitations under section 85.26 is the date when the disability manifests itself. *George A. Hormel & Co. v. Jordan,* 569 N.W.2d 148, 151 (Iowa 1997). "Manifestation" means the date when both the fact of the injury and the injury's causal relationship to the claimant's employment would be plainly apparent to a reasonable person. *Id.*

As already discussed, the industrial commissioner found that Gates' injury—involving not only his back but his hips and legs—manifested itself long before he was diagnosed with aseptic necrosis in March 1991. More importantly, the record substantially supports the conclusion that the aseptic necrosis stemmed from improperly administered steroid injections, not cumulative trauma to the hip joints. It is true, as Gates suggests, that the record contains testimony to the effect that, following a fracture or other trauma, repeated standing may lead to the development of necrosis. But we are bound by the findings actually made, not those the fact finder could have made. *See Terwilliger*, 529 N.W.2d at 271. No reversible error appears.

AFFIRMED.