**Diane PERKINS, Appellee,**

v.

**HEA OF IOWA, INC. d/b/a Clinton Retirement Village, Employer, and Insurance Company Of North America, Appellants.**

No. 00–1203.

Supreme Court of Iowa.

Sept. 5, 2002.

Mark A. Woollums and Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellants.

James D. Bruhn of Farwell & Bruhn, Clinton, for appellee.

LARSON, Justice.

Diane Perkins contracted hepatitis C as a result of her employment at HEA of Iowa, a retirement facility in Clinton. An arbitrator awarded her workers' compensation benefits, but the award was vacated by the acting industrial commissioner. On judicial review, the award was reinstated by the district court, which ruled that the commissioner's findings, with respect to the application of our discovery rule, were not supported by substantial evidence. The employer appealed. The court of appeals, on a divided vote, affirmed. We granted the employer's application for further review. We affirm the decision of the court of appeals and the judgment of the district court.

## I. *Facts and Prior Proceedings.*

The industrial commissioner found the following facts. On October 2, 1990, a patient at HEA had a shunt in his leg used for attaching a dialysis catheter. The shunt was pulsating and leaking blood. The charge nurse directed Perkins to take the patient's vital signs and to re-dress the shunt wound. Part of Perkins' job was to listen for "bruits" (or unusual noises). As Perkins leaned over the patient's leg to listen for bruits near the shunt, the leg ruptured. The entire room was sprayed with blood. Perkins had blood all over her body and in her mouth, eyes, and ears.

The patient was infected with hepatitis C, a fact not known to Perkins prior to the rupture. Perkins testified she did not even know what hepatitis C was at that time. A written report of the incident was made, and Perkins was informed by the director of nursing at HEA that, because the patient had hepatitis C, Perkins needed to be tested. A letter in evidence from HEA to its insurance carrier regarding this event described the protocol for testing for hepatitis C infection. The tests should be conducted shortly after possible exposure in order to determine whether the exposed person had been previously infected. Six months later a second test should be performed to determine if the disease had actually been contracted. A third test is recommended at one year after exposure. Perkins was tested on October 11, 1990, shortly after the event, and the test results were negative. The testing physician recommended that she be retested six months after her exposure. However, no other testing was done until late 1995 when Perkins had pneumonia or early 1996 when she was seen at the University of Iowa Hospitals and Clinics. Through these tests, Perkins was found to have abnormal liver function, but she was

not actually diagnosed with hepatitis C until April 1996.

Perkins filed a workers' compensation claim in October 1996. HEA defended on the grounds that this was an occupational disease under Iowa Code chapter 85A (1995), and her claim was barred by the one-year statute of repose under section 85A.12. In the alternative, HEA claimed, if this was an "injury" under Iowa Code chapter 85, it was barred by the two-year statute of limitations of section 85.26(1). Perkins responded that this event did not result in an occupational disease under chapter 85A, and as to the statute of limitations under chapter 85, her injury had not been discovered until 1995 or 1996. Under our discovery rule, she claims, her application for benefits was timely.

## II. *Principles of Review.*

■ Our review of an industrial commissioner's decision is on error, not de novo. We, like the district court, are bound by factual findings made by the commissioner so long as those findings enjoy substantial support in the record made before the agency.

*Gates v. John Deere Ottumwa Works*, 587 N.W.2d 471, 474 (Iowa 1998) (citing *Terwilliger v. Snap–On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995)). The industrial commissioner found that Perkins was put on "inquiry notice" at the time she was advised of the seriousness of hepatitis C exposure and the necessity of further testing.

While the focus of the industrial commissioner and the reviewing courts has been on the application of the discovery doctrine, we must first focus on the employer's claim that this was an occupational disease, not an industrial injury. If it was an occupational disease, Iowa Code section 85A.12 would indisputably defeat

the claim because that section is a statute of repose, not a statute of limitation. Therefore, the discovery rule would be inapplicable to save the plaintiff's case. *See Ganske v. Spahn & Rose Lumber Co.*, 580 N.W.2d 812, 815 (Iowa 1998). We therefore address the question of whether this was an occupational disease or an industrial injury.

## III. *The Occupational Disease Argument.*

■ The statutory definition describes an occupational disease in terms of a worker's "exposure" to conditions in the workplace.... The term "exposure" indicates a passive relationship between the worker and his work environment rather than an event or occurrence or series of occurrences, which constitute injury under the Workers' Compensation Act.

*Noble v. Lamoni Prods.*, 512 N.W.2d 290, 295 (Iowa 1994).

We have said:

[A]n "injury" is distinguished from a "disease" by virtue of the fact that an injury has its origin in a specific identifiable trauma or physical occurrence or, in the case of repetitive trauma, a series of such occurrences. A disease, on the other hand, originates from a source that is neither traumatic nor physical....

*Id.* (quoting *Luttrell v. Indus. Comm'n*, 154 Ill.App.3d 943, 107 Ill.Dec. 620, 507 N.E.2d 533, 541–42 (1987)).

It is significant in determining whether Perkins suffered an occupational disease, or an injury under workers' compensation, that Perkins' infection was linked to a sudden, specific incident of exposure.

The contraction of disease is deemed an injury by accident in most states if due to some unexpected or unusual event or

exposure. Thus, infectious disease may be held accidental if the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection.

3 Larson's Workmen's Compensation Law § 51, at 51–1 (2002).

 Under our case law,

"[a] personal injury, contemplated by the Workmen's Compensation Law, obviously means an injury to the body, the impairment of health, or a disease, not excluded by the act, which comes about, not through the natural building up and tearing down of the human body, but because of a traumatic or other hurt or damage to the health or body of an employee. . . . The injury to the human body here contemplated must be something, whether an accident or not, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body. This is the personal injury contemplated by [the workers' compensation statute]."

St. Luke's Hosp. v. Gray, 604 N.W.2d 646, 650–51 (Iowa 2000) (quoting Dunlavey v. Econ. Fire & Cas. Co., 526 N.W.2d 845, 850–51 (Iowa 1995)) (citations omitted); see also Dyke v. St. Francis Hosp., Inc., 861 P.2d 295, 301–02 (Okla.1993); Enid State Sch. v. Mitchell, 590 P.2d 1179, 1180 (Okla.1978); City of Nichols Hills v. Hill, 534 P.2d 931, 934–35 (Okla.1975).

 We agree with the industrial commissioner, the district court, and the court of appeals that this was an "injury" under the workers' compensation provisions of Iowa Code chapter 85, not an "occupational disease" under chapter 85A. The issue still to be resolved is the application of the statute of limitations and the discovery rule.

## IV. The Discovery Issue.

Under Iowa Code section 85.26(1),

[a]n original proceeding for benefits under this chapter or chapter 85A . . . shall not be maintained in any contested case unless the proceeding is commenced within two years from the date of the occurrence of the injury for which benefits are claimed. . . .

 This two-year statute of limitations is tempered by our "discovery" rule, which tolls the running of the statute until the injury is or should have been discovered. See Ranney v. Parawax Co., 582 N.W.2d 152, 154 (Iowa 1998). The application of the discovery rule in personal injury and workers' compensation cases has spawned considerable litigation in this court. The key issue has been: What did the claimant know concerning the elements of her claim, and when did she know it? The issue turns on whether Perkins was sufficiently on notice of an injury so as to have a duty to investigate further, under the reasonable-diligence standard, by arranging to be tested again after six months and one year from her exposure. This notice of the need to investigate has been referred to as "inquiry notice." Ranney, 582 N.W.2d at 155.

Knowledge is imputed to a claimant when he gains information sufficient to alert a reasonable person of the need to investigate. As of that date he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation.

Id. (citation omitted). The industrial commissioner found that the statute of limitations, Iowa Code § 85.26(1), barred Perkins' claim because she was on inquiry notice of the key elements of her claim immediately upon her exposure to the patient's blood.

We held in Ranney that

the two-year limitation period begins to run when "the employee discover[s] or in the exercise of reasonable diligence should ... discover[ ] the nature, seriousness and probable compensable character" of his injury or disease.

*Id.* at 154 (quoting *Orr v. Lewis Cent. Sch. Dist.,* 298 N.W.2d 256, 261 (Iowa 1980)). We have held that a claimant must have knowledge, either actual or implied, of all three characteristics of the injury before the statute begins to run. *Swartzendruber v. Schimmel,* 613 N.W.2d 646, 650 (Iowa 2000); *Montag v. T.H. Agric. & Nutrition Co.,* 509 N.W.2d 469, 470 (Iowa 1993).

In *Ranney* the claimant was exposed to toxic paint solvents in his job from 1975 to 1981. In 1985 he was diagnosed with Hodgkin's disease. Following his diagnosis, he inquired of several doctors about a possible connection between his exposure to the chemicals and his disease. In 1987 or 1988 his wife was a law student, and she discussed with Ranney the possibility of a connection between the exposure to chemicals and his health condition. *Ranney,* 582 N.W.2d at 154. In 1991 Ranney asked a treating doctor about a connection, and the doctor confirmed a link between the job and his injury. Ranney filed his workers' compensation case in 1991 and relied on the discovery rule to avoid the application of the statute of limitations.

We rejected Ranney's claim that inquiry notice did not apply to his case because he suffered from a latent injury. We said:

> When Ranney was diagnosed with Hodgkin's disease in 1985, his condition was no longer latent; it was then known. At that point, Ranney was subject to the same duty to investigate as is any other plaintiff who knows he has sustained an injury.

*Id.* at 154. We also rejected Ranney's argument that he could not be charged with inquiry notice unless he was aware of the probable connection between his injury and his employment.

> We think that once a claimant knows or should know that his condition is possibly compensable, he has the duty to investigate. The purpose of the investigation is to ascertain whether the known condition is probably, as opposed to merely possibly, compensable.

*Ranney,* 582 N.W.2d at 155 (citations omitted).

In *Montag* the claimant was exposed to a toxic spray known as Agent Orange from 1962 to 1964. In 1979 the claimant was diagnosed with liposarcoma, and he began treatment. The evidence was that in 1986 his doctor informed him that, while the doctor did not know of a connection with the claimant's employment, "it could be looked into further." *Montag,* 509 N.W.2d at 470. The fact that Montag knew he had an illness in 1979 and knew of a possible connection with his employment in the early 1960s precluded the application of the discovery rule in his case. He did not file suit until 1991, and we held it was barred by the two-year statute of limitations of Iowa Code section 614.1(2). We said:

> Montag had enough information, more than two years preceding the filing of his lawsuit, to put him on notice that he should investigate. In fact, at least by 1986, he had already begun his investigation.

*Id.* at 471.

In *Gates v. John Deere Ottumwa Works,* 587 N.W.2d 471 (Iowa 1998), the claimant suffered a back injury and had surgery in 1985 and 1988. In 1991 he underwent bilateral hip surgery to treat a condition of aseptic necrosis in his hips, determined by his doctor to be caused by negligent treatment in 1988 to relieve the claimant's back pain. The workers' compensation claim, filed in 1993, was determined to be too late

because he "was fully aware of the seriousness of his back injury, and its work-related and compensable nature, no later than February 1988." *Gates*, 587 N.W.2d at 475.

■ In *LeBeau v. Dimig*, 446 N.W.2d 800 (Iowa 1989), the plaintiff was injured in an automobile accident on November 12, 1983. She made a claim for minor head injuries and was paid by the other driver, Dimig. In August 1985 LeBeau was diagnosed as having epilepsy. On July 31, 1987, she sued Dimig, claiming the epilepsy was caused by the 1983 accident. *LeBeau*, 446 N.W.2d at 801. The defendant raised the two-year statute of limitations under Iowa Code section 614.1(2). The plaintiff resisted a motion for summary judgment based on that defense by claiming she did not know, until 1985, that she had epilepsy. We said:

> The issue raised in this appeal, however, is apparently one of first impression: When an accident occurs causing minor injuries and later more serious injuries appear, does the plaintiff's cause of action "accrue" for statute of limitations purposes at the time of the first injury; at the time of the later manifestation of another injury; or are there two time periods, one commencing with the first injury and the other upon discovery of the second injury?

*Id.* at 801–02. We characterized this as a "traumatic event/latent manifestation" case, or

> one in which the plaintiff has sustained both immediate and latent injuries caused by a noticeable, traumatic occurrence. At the time of the traumatic event, the plaintiff realizes both that he is injured and what is responsible for causing the injury. The full extent of the harm, however, has not become manifested.

*Id.* at 802 (quoting *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 231 (5th Cir. 1984)). Although we characterized LeBeau's argument as "compelling," we rejected it because her theory would allow splitting of a cause of action, resulting in the application of different statutes of limitation and inserting uncertainty into the resolution of such cases. *LeBeau*, 446 N.W.2d at 802. In *LeBeau* we held the plaintiff's initial complaint of a minor injury and her collection of a relatively small settlement ($200) evidenced sufficient awareness of her injury to subject her claim to the two-year statute of limitations. *Id.* at 803. This "seriousness" component of inquiry notice, *see Ranney*, 582 N.W.2d at 154, is not triggered by "every minor ache, pain, or symptom" as we have noted. *See Swartzendruber*, 613 N.W.2d at 650 (citing 2B Arthur Larson, *Workers' Compensation* § 78.41(e), at 15–279 (1994)). Therefore,

> the failure to file a claim within two years of the occurrence of the injury may be excused if the claimant had no reason to believe the condition was serious. If the injury is trivial or minor, or the symptoms indicate no serious problem, the seriousness component is not met.

*Swartzendruber*, 613 N.W.2d at 650 (citation omitted).

## V. *Resolution of the Discovery Issue.*

The industrial commissioner in assessing the discovery issue stated:

> Claimant knew shortly after the incident at the nursing home that she had been *exposed* to hepatitis C. She was tested, and informed of the seriousness of the disease or condition [which she did not yet have]. She was counseled to return for further testing in six to twelve months for a final determination regarding her status. She was fully informed of the need for the testing, and underwent the initial tests. Claimant did not

follow-up with the medical care providers to undergo the later testing.

Claimant knew of the *possibility* that she contracted hepatitis C at the time she took the initial test, October 11, 1990. As of October 11, 1990, she had been informed that the patient had hepatitis C.

Based on the evidence, it cannot be determined that claimant was unaware of the seriousness of her condition, and that the condition was work-related.

Claimant failed to file her petition within two years after the date of the injury, which was October 2, 1990. As a result, she takes nothing from these proceedings.

(Emphasis added.)

■ None of our cases, and none of those cited by the HEA or the industrial commissioner, have applied the rule of law announced in the commissioner's ruling, *i.e.*, that *exposure* to a disease triggers a duty to inquire further. In all of the Iowa cases discussed in this opinion, the claimant knew he or she was injured, not merely exposed to injury, before the duty to inquire arose. In some cases the claimant did not know how serious the injury was or whether it was work-related, but in all of the cases the claimant knew he or she had suffered an injury before the statute of limitations began to run.

The Oklahoma Supreme Court, in another hepatitis C case, reached the same conclusion:

> *Mere exposure* to an infectious disease, no matter how threatening, is not enough to constitute a compensable event—it is not "accidental injury." An on-the-job exposure must pass through the incubation period and develop into an infectious disease *before* it may be viewed as an accidental injury compensable by the employer. An employer's apprehension of an employee's exposure to a disease, even when followed by the

act of administering prophylactic vaccination, cannot be translated into compensation liability for an "accidental personal injury."

*Dyke,* 861 P.2d at 301–02.

If there is anything clear in this record with respect to the "condition" to which the commissioner referred, it is that as of the time Perkins is charged with inquiry notice she had not been injured. She had been exposed through a traumatic and frightening event, but she was not injured. If, as we have said, inquiry notice does not arise from "every minor ache, pain, or symptom," *Swartzendruber,* 613 N.W.2d at 650, inquiry notice surely cannot be triggered when there is *no* ache, pain, or symptom of an injury. An injury is generally defined as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice." *See* Black's Law Dictionary 789 (1999). Our workers' compensation law does not provide a remedy for a person who has merely been exposed to injury.

We hold the date of injury was the date Perkins discovered she had hepatitis C, April 20, 1996, the date it was diagnosed. It did not commence from the date she was exposed to it. The industrial commissioner's application of a contrary rule in this case is "affected by other error of law," Iowa Code § 17A.19(8)(e), and must be reversed. We therefore affirm, although on different grounds, both the ruling of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except NEUMAN, J., who takes no part.