# IN THE SUPREME COURT OF IOWA

No. 07–1887

Filed July 10, 2009

**IBP, INC.,**

Appellee,

vs.

**LEE BURRESS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Employee challenges district court's determination that his brucellosis was an occupational disease and not an injury. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.**

Jason D. Neifert of Max Schott & Associates, P.C., Des Moines, for appellant.

Timothy A. Clausen and Sharese Manker of Klass Law Firm, L.L.P., Sioux City, for appellee.

**STREIT, Justice**.

Pigs give us bacon and ham. They can also give meat packers brucellosis. Lee Burress contracted brucellosis while working at IBP, Inc.'s meat-packing plant. He did not discover he had the disease until six years after he left IBP's employment. Soon thereafter, he filed a petition for workers' compensation benefits. The deputy commissioner determined brucellosis was an injury, not an occupational disease. The commissioner affirmed. The district court reversed, concluding Burress suffered from an occupational disease, not an injury. The court of appeals reversed the district court. Because Burress contracted brucellosis from a traumatic event, it is an injury, and he is entitled to benefits under Iowa Code chapter 85 (2009).[1]

## I. Background Facts and Proceedings.

Lee Burress worked at IBP, Inc.'s meat-packing plant from 1987 until 1997. During his first few years working there, Burress worked as a jowl and side shaver, a hog sticker (killing the hog by sticking a knife in its throat), and a head dropper (cutting the head off the hog). These positions involved significant contact with hogs and hog blood. On at least one occasion, Burress cut his finger while dropping heads. During his final eight years at IBP, Burress worked in the trolley room, where he was responsible for running automated carts to various places within the plant. Although he did not have much contact with hogs in this position, he would occasionally come into contact with hog blood. During these eight years, he cut his finger and elbow and sustained a superficial puncture wound to his face. Burress stopped working for IBP in September 1997.

---

[1]No substantive difference exists in the relevant current code sections and those in force at the time the action arose. Therefore, all references are to the 2009 Iowa Code unless otherwise indicated.

In July 2003, Burress began experiencing hip pain. The source of the hip pain was unclear. Burress underwent hip surgery in September 2003 and developed an infection that lasted for several months. In December 2003, Burress was diagnosed with brucellosis with osteomyelitis. In December 2004, Dr. William Nauseef told Burress he had contracted brucellosis from hog blood, with skin abrasions being the most common "portal of entry."

On January 3, 2005, Burress filed a workers' compensation petition alleging he had developed "chronic infection, hips, bone" as a result of his "[c]ontact with blood products and tissue from slaughtered hogs." In its answer to the petition, IBP alleged the claimed injury is an occupational disease, not an injury, under Iowa Code chapter 85A, and, therefore, recovery is barred under section 85A.12.[2]

Following a hearing, the deputy commissioner determined "[s]ince it is most likely [Burress] contracted brucellosis as a result of trauma, the injury is an injury under chapter 85, not an occupational disease." The deputy commissioner also found Burress did not become "aware of the probable compensable character of his condition until sometime in early December of 2004," and his petition was filed within two years, as prescribed by chapter 85. The deputy commissioner awarded Burress permanent partial disability benefits.

IBP filed an application for rehearing, which the deputy commissioner denied. On intra-agency appeal, the commissioner affirmed and adopted the deputy commissioner's arbitration decision with one modification, that Burress met the definition of being

---

[2]Under section 85A.12, an employer is relieved from liability one year after the worker's last exposure.

permanently and totally disabled and was thus entitled to permanent total disability benefits. IBP filed a petition for judicial review.

The district court reversed the agency's decision, concluding Burress suffered from an occupational disease, not an injury. The court determined Burress failed to file his petition within one year after the last exposure, as required by Iowa Code section 85A.12. Burress appealed.

We transferred the case to the court of appeals, which reversed the district court's decision, finding the commissioner's determination Burress had suffered an injury was supported by substantial evidence. IBP appealed.

## II. Scope of Review.

We review the commissioner's legal findings for correction of errors at law. Iowa Code § 17A.19(10)(*c*), (*m*); *Perkins v. HEA of Iowa, Inc.*, 651 N.W.2d 40, 43 (Iowa 2002). "Our task is to determine whether the district court, acting in its appellate capacity in these judicial review proceedings, applied the law correctly." *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 292 (Iowa 1994). We are bound by the commissioner's findings of fact so long as those findings are supported by substantial evidence. *Excel Corp. v. Smithart*, 654 N.W.2d 891, 896 (Iowa 2002); Iowa Code § 17A.19(10)(*f*). Under Iowa Code section 17A.19(10), "a reviewing court may reverse the decision of the workers' compensation commissioner if it is unsupported by substantial evidence in the record or characterized by an abuse of discretion." *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004). " '*Substantial evidence*' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa

Code § 17A.19(10)(*f*)(1). An abuse of discretion occurs when the commissioner's exercise of discretion is "clearly erroneous or rests on untenable grounds." *Waters*, 674 N.W.2d at 96.

### III. Merits.

Today we must determine whether the brucellosis Burress contracted is an injury or an occupational disease. The legislature has set forth two workers' compensation schemes: one for injuries under Iowa Code chapter 85 and one for occupational diseases under chapter 85A. In order to qualify for workers' compensation benefits under chapter 85, the employee must demonstrate "(1) the claimant suffered a 'personal injury,' (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 220 (Iowa 2006). Comparatively, to recover under chapter 85A, "the disease must be causally related to the exposure to harmful conditions of the field of employment," and "those harmful conditions must be more prevalent in the employment concerned than in everyday life or in other occupations." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 190 (Iowa 1980).

If Burress suffers from an occupational disease, his claim is barred by the statute of repose. *See* Iowa Code § 85A.12 ("An employer shall not be liable for any compensation for an occupational disease . . . unless disablement or death results . . . within one year . . . after the last injurious exposure to such disease in such employment . . . .") However, if his brucellosis is an injury, his claim is not time barred. *Swartzendruber v. Schimmel*, 613 N.W.2d 646, 650 (Iowa 2000) (holding the two-year statute of limitations under Iowa Code section 85.26 does not begin to run "until the employee discovers, or should discover in the

exercise of diligence, the nature, seriousness, and probable compensable character of the injury or disease").

Thus, whether Burress' brucellosis is an injury or an occupational disease is the key issue. Section 85A.8 defines occupational disease:

> Occupational diseases shall be only those diseases which arise out of and in the course of the employee's employment. Such diseases shall have a direct causal connection with the employment and must have followed as a natural incident thereto from injurious exposure occasioned by the nature of the employment. Such disease must be incidental to the character of the business, occupation or process in which the employee was employed and not independent of the employment. Such disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have resulted from that source as an incident and rational consequence. A disease which follows from a hazard to which an employee has or would have been equally exposed outside of said occupation is not compensable as an occupational disease.

Although section 85A.8 defines occupational disease, chapter 85 does not adequately define the term "injury." Under section 85.61(4)(*b*), the word "injury" "shall not include a disease unless it shall result from the injury and they shall not include an occupational disease as defined in section 85A.8."

Our case law has filled the gap and explained the differences between an occupational disease and an injury.

> "[A]n 'injury' is distinguished from a 'disease' by virtue of the fact that an injury has its origin in a specific identifiable trauma or physical occurrence or, in the case of repetitive trauma, a series of such occurrences. A disease, on the other hand, originates from a source that is neither traumatic nor physical . . . ."

*Noble*, 512 N.W.2d at 295 (quoting *Luttrell v. Indus. Comm'n*, 507 N.E.2d 533, 541–42 (Ill. App. Ct. 1987)). Thus, the main distinction between an injury and an occupational disease is the method of contraction.

"The statutory definition describes an occupational disease in terms of a worker's 'exposure' to conditions in the workplace. . . . The term 'exposure' indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Worker's Compensation Act."

*Id.* (quoting *Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122, 1125 (Ind. Ct. App. 1993)). We have also determined that, under certain circumstances, a disease can be an injury for purposes of chapter 85.

"The contraction of disease is deemed an injury by accident in most states if due to some unexpected or unusual event or exposure. Thus, infectious disease may be held accidental if the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection."

*Perkins*, 651 N.W.2d at 43–44 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* ch. 51, Scope, at 51–1 (2002)).[3]

What types of diseases are strictly occupational diseases and not injuries is debatable. Prior to 1973, chapter 85A restricted recovery for occupational diseases to seventeen diseases specifically listed in Iowa Code section 85A.9 (1971). *See McSpadden*, 288 N.W.2d at 190. In 1973, the legislature repealed that section and broadened the definition of occupational disease in section 85A.8. *Id.*; *see also* 1973 Iowa Acts ch. 144, § 24. Currently, chapter 85A makes reference to only two diseases, brucellosis in section 85A.11 and pneumoconiosis (the characteristic

---

[3]Iowa's workers' compensation statute, Iowa Code section 85.61 (2009), does not limit compensable injuries to those that are "accidental," and, therefore, it is broader than statutes from other states that do contain an "accidental injury" limitation. *See Ford v. Goode*, 240 Iowa 1219, 1222, 38 N.W.2d 158, 159 (1949) (interpreting 1946 statutory provision, which is substantially similar to the 2009 provision); *see also Perkins,* 651 N.W.2d at 44 (" 'The injury to the human body here contemplated must be something, *whether an accident or not*, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body.' " (quoting *St. Luke's Hosp. v. Gray,* 604 N.W.2d 646, 650–51 (Iowa 2000)) (Emphasis added.)).

fibrotic condition of the lungs caused by the inhalation of dust particles) in section 85A.13. Our case law has permitted recovery for allergic contact dermatitis and lead intoxication under chapter 85A. *See Doerfer Div. of CCA v. Nicol*, 359 N.W.2d 428, 432 (Iowa 1984); *Frit Indus. v. Langenwalter*, 443 N.W.2d 88, 91 (Iowa Ct. App. 1989). *But see St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 652 (Iowa 2000) (allergic reactions may be considered injuries under chapter 85). In *McSpadden*, we noted other states considered the following to be occupational diseases: chronic bronchitis, kidney disorder and asthma caused by inhalation of paint fumes, and pulmonary disease caused by inhalation of smoke and fumes. *McSpadden*, 288 N.W.2d at 190–91 n.5. Although chapter 85A no longer limits recovery for occupational diseases to a specific schedule, section 85A.8 and our case law indicate an occupational disease is generally acquired from repeated exposure to a toxin in the workplace. *See Doerfer*, 359 N.W.2d at 432–33.

Other states have determined that "under proper factual situations contraction of brucellosis can be characterized as accidental injury" rather than an occupational disease. *Wilson Foods Corp. v. Porter*, 612 P.2d 261, 263 (Okla. 1980). Recognizing that "in spite of being recognized as a disease, brucellosis can still be categorized as a[n] accidental personal injury," the Supreme Court of Oklahoma determined an employee who contracted brucellosis through cracks in his skin while working with cowhides had a compensable injury. *Id.*; *see also Mid-South Packers, Inc. v. Hanson*, 178 So. 2d 689, 691 (Miss. 1965) (contamination through cuts and scrapes on maintenance worker's hands considered to be accidental injury and not an occupational disease because "contraction of [brucellosis] . . . was an occurrence which was not expected, designed, or intentionally caused"); *Baldwin v.*

*Jensen-Salsbery Labs.*, 708 P.2d 556, 558 (Kan. Ct. App. 1985) (brucellosis considered accidental injury where employee cut his hand and then touched a tool contaminated with brucella).

Here, the deputy commissioner, whose findings were adopted by the commissioner, determined Burress' brucellosis was an injury and not a disease.

> The evidentiary record indicates [Burress] was exposed to brucellosis in an event that occurred unexpectedly. The event, most likely a cut to [his] hand and exposure to blood, was sudden, traumatic, and of a brief duration. It might be said that workers in a hog packing plant have a greater than average risk of contracting brucellosis, but that risk is the result of risk from a traumatic injury under circumstances that result in infection of the disease as a consequence of trauma.

IBP contends the commissioner's decision that Burress' brucellosis was an injury, and not an occupational disease, was not supported by substantial evidence. Arguing that since Iowa Code section 85A.11 discusses brucellosis,[4] and that Iowa Code section 85.61(4)(*b*) defines

---

[4]Entitled "Diagnosis for brucellosis," section 85A.11 reads

1.  When any employee is clinically diagnosed as having brucellosis (undulant fever), it shall not be considered that the employee has the disease unless the clinical diagnosis is confirmed by:

>   a.  A positive blood culture for brucella organisms, or

>   b.  A positive agglutination test which must be verified by not less than two successive positive agglutination tests, each of which tests shall be positive in a titer of one to one hundred sixty or higher. Said subsequent agglutination tests must be made of specimens taken not less than seven nor more than ten days after each preceding test.

2.  The specimens for the tests required herein must be taken by a licensed practicing physician or osteopathic physician, and immediately delivered to the university hygienic laboratory of the Iowa department of public health at Iowa City, and each such specimen shall be in a container upon which is plainly printed the name and address of the subject, the date when the specimen was taken, the name and address of the subject's employer and a certificate by the physician or osteopathic

"injury" as excluding occupational diseases, IBP asserts brucellosis can never be considered an injury under chapter 85.

First, we disagree with IBP and the district court that brucellosis can never be an injury. Just because brucellosis is listed in Iowa Code section 85A.11 does not mean brucellosis is always considered an occupational disease. Our case law has established that a disease can be an injury for purposes of chapter 85 when " 'the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection.' " *Perkins*, 651 N.W.2d at 43–44 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* ch. 51, Scope, at 51–1). In *Perkins*, we determined the employee's hepatitis C was an injury because her "infection was linked to a sudden, specific incident of exposure." *Id.* at 43. Such is the case here. It would be inconsistent to preclude recovery for a disease that was most likely acquired through a similar unexpected trauma only because section 85A.11 explains how a diagnosis of brucellosis should be confirmed. There is nothing in the record to indicate that Burress contracted brucellosis through a passive exposure to conditions in the workplace. *Noble*, 512 N.W.2d at 295. Burress did not contract brucellosis through prolonged or passive exposure; it only took one traumatic exposure. As the expert's description of how brucellosis is acquired indicates, "[t]he portal of entry [for brucellosis] is through abrasions in skin, most commonly, during

---

physician that the physician took the specimen from the named subject on the date stated over the physician's signature and address.

3. The state hygienic laboratory shall immediately make the test and upon completion thereof it shall send a report of the result of such test to the physician or osteopathic physician from whom the specimen was received and also to the employer.

4. In the event of a dispute as to whether the employee has brucellosis, the matter shall be determined as any other disputed case.

handling of infected animals or their carcasses. There is risk of aerosol transmission in slaughter houses as well, although this appears to be less common."

Further, just because Burress cannot pinpoint when the injury specifically occurred does not mean he did not suffer an injury. In *St. Luke's Hospital v. Gray*, we determined the employee's latex allergy to be an injury despite the fact the employee had not been injured on a specific date, but rather was exposed to the allergen on a frequent basis in the course of employment. 604 N.W.2d at 652. Here, the record reveals Burress was exposed to a significant amount of hog blood while dropping heads and sticking hogs and occasionally came into contact with hog blood in the trolley room. In all *probability*, he contracted brucellosis during one of these incidents. However, because Burress' brucellosis did not manifest itself until 2003, six years after his last reported work-related injury, it is difficult to link contracting the disease to one specific injury. The states that have considered the contraction of brucellosis an injury have permitted recovery despite the fact that the claimant was not able to pinpoint the specific incident of exposure that resulted in contraction of the disease. *See Wilson Foods*, 612 P.2d at 263 (employee who contracted brucellosis through cracks in his skin while working with cowhides had a compensable injury); *Mid-South Packers,* 178 So. 2d at 691 (contamination through cuts and scrapes on maintenance worker's hands considered to be an accidental injury).

Our case law reveals that contact with infected blood is an "injury" under Iowa Code chapter 85. In *Perkins*, the claimant was infected with hepatitis C when she was sprayed with blood while working on a patient. *Perkins*, 651 N.W.2d at 42. We determined this "sudden, specific incident of exposure" to be an injury despite the fact that Perkins was not "injured" per se. *Id.* at 43. The injury was being doused with

infected blood, not being accidentally cut. *Id.* at 43–44. In our case, Burress testified he was frequently sprayed with and soaked in blood while shaving and slaughtering hogs. Should our analysis of whether Burress sustained an identifiable injury under Iowa Code chapter 85 be any different because he sustained multiple injuries (numerous unexpected contacts with hog blood), none of which he was able to specifically link to his brucellosis? We doubt our conclusion in *Perkins* would have been any different had Perkins come into contact with a patient's infected blood on more than one occasion.

Despite the fact that brucellosis is discussed in chapter 85A, the record supports the conclusion Burress probably acquired brucellosis from contact with infected hog blood. There is substantial evidence supporting the commissioner's determination that Burress' contraction of brucellosis is an injury, not an occupational disease: Burress' testimony indicating various cuts (portals of entry) and frequent contact with hog blood while working at IBP and the expert's description of how brucellosis is usually acquired. IBP did not present any evidence indicating Burress had contracted brucellosis in a manner consistent with the definition of occupational disease in section 85A.8. It simply relied on the reference to brucellosis in section 85A.11. There is substantial evidence in the record supporting the commissioner's decision Burress contracted brucellosis from a traumatic occurrence: the entry of infected hog blood into Burress' body.

**IV. Conclusion.**

Because Burress contracted brucellosis from a traumatic event, it is an injury, and not an occupational disease. Therefore, he is entitled to benefits under Iowa Code chapter 85.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.**