# IN THE SUPREME COURT OF IOWA

No. 68 / 04-1910

Filed December 8, 2006

**HARVEY'S CASINO**,

>   Appellant,

vs.

**BEVERLY ISENHOUR**,

>   Appellee.

---

**AMERISTAR CASINOS COUNCIL BLUFFS, INC.** and **GAB ROBINS,**

>   Appellants,

vs.

**AMANDA A. DAVIS,**

>   Appellee.

---

**AMERISTAR CASINOS COUNCIL BLUFFS, INC.** and **GAB ROBINS,**

>   Appellants,

vs.

**HELEN FALANGA,**

>   Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Gordon C. Abel, Judge.

Two riverboat casinos appeal from judgment awarding workers' compensation benefits to three claimants, and court of appeals reversed.

**DECISION OF COURT OF APPEALS AFFIRMED, JUDGMENT OF DISTRICT COURT REVERSED, CASE REMANDED.**

William D. Gilner and Scott A. Lautenbaugh of Nolan, Olson, Hansen & Lautenbaugh, LLP, Omaha, Nebraska, for appellant Harvey's Casino.

John B. Morrow and Tiernan T. Siems of Erickson & Sederstrom, P.C., Omaha, Nebraska, and Michael J. Obradovich, Omaha, Nebraska, for appellants Ameristar Casinos Council Bluffs, Inc. and Gab Robins.

Jacob J. Peters of Peters Law Firm, P.C., Council Bluffs, for appellees.

**LARSON, Justice.**

Three workers' compensation claimants, Amanda Davis, Helen Falanga, and Beverly Isenhour, claimed benefits for injuries sustained while employed on riverboat casinos in Council Bluffs. The Workers' Compensation Commissioner ruled that the commission had subject matter jurisdiction to award benefits, and the district court agreed. The court of appeals reversed, holding that the claimants were "seamen" working on vessels for which the Federal Jones Act provided exclusive benefits. We affirm the court of appeals decision, reverse the district court, and remand.

## I. *Facts and Prior Proceedings.*

Amanda Davis and Helen Falanga were injured while employed on the Ameristar Casino Riverboat in Council Bluffs as a slot machine attendant and "banker," respectively. Beverly Isenhour was a floor host on Harvey's Casino Riverboat in Council Bluffs. All three claimed injuries sustained in their employment and filed workers' compensation claims under Iowa Code chapter 85 (2001). The three claims were eventually consolidated, and the district court, on judicial review, affirmed the Workers' Compensation Commissioner's ruling that the commission had jurisdiction to award benefits because the claims were not preempted by the Jones Act. The basis for the district court's ruling was that the claimants were not seamen and the riverboat casinos were not vessels as required for coverage under the Jones Act. The court of appeals reversed, ruling that the Workers' Compensation Commission lacked jurisdiction to award benefits, based largely on a Supreme Court case decided after the district court's ruling—*Stewart v. Dutra Construction Co.,* 543 U.S. 481, 125 S. Ct. 1118, 160 L. Ed. 2d 932 (2005). On this further review, the claimants argue that the court of appeals erred in relying on *Stewart* because that case is distinguishable.

## II.  *Standard of Review.*

Our review of agency action is for correction of errors at law.  *Gates v. John Deere Ottumwa Works*, 587 N.W.2d 471, 474 (Iowa 1998).  Review is governed by Iowa Code section 17A.19.  This court is bound by the factual findings made by the agency if those findings enjoy substantial support on the record made before the agency.  *Id.*  This court will liberally construe Iowa's workers' compensation statutes for the benefit of the injured employee.  *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 505-06 (Iowa 1981).

## III.  *Resolution.*

Under Iowa Code section 85.1(6), if an injured worker is covered by a compensation statute enacted by Congress, the worker is not covered by Iowa's workers' compensation law.  In this case, Harvey's and Ameristar argue that the injured employees are covered by the Federal Jones Act, which provides in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

46 App. U.S.C. § 688(a).

Harvey's and Ameristar argue that the employees were "seamen" under this act, and therefore the Workers' Compensation Commission lacked subject matter jurisdiction to award benefits.  The term "seaman" is not defined in the Jones Act, apparently because it was believed to be a term of art with an established meaning under general maritime law. *Stewart*, 543 U.S. at 487, 125 S. Ct. at 1123, 160 L. Ed. 2d at 941. Congress, however, provided some guidance in 1927 when it enacted the Longshore and Harbor Workers' Compensation Act (LHWCA), which

provides compensation to land-based maritime workers, but excludes from its coverage "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). This exception has been described as "a refinement of the term 'seaman' in the Jones Act . . . ." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347, 111 S. Ct. 807, 813, 112 L. Ed. 2d 866, 877 (1991). The Supreme Court has articulated two "essential requirements" for seaman status under the Jones Act:

> First, . . . "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'". . .
>
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

*Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190, 132 L. Ed. 2d 314, 337 (1995) (quoting *McDermott Int'l*, 498 U.S. at 355, 111 S. Ct. at 817, 112 L. Ed. 2d at 882). Therefore, in order to be a "seaman," the employee must have a substantial connection to a "vessel," and the employee must contribute to the function of the vessel or to the accomplishment of its mission. The Court further explained:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Chandris*, 515 U.S. at 368, 115 S. Ct. at 2190, 132 L. Ed. 2d at 337.

> "If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied."

*Id.* at 368-69, 115 S. Ct. at 2190, 132 L. Ed. 2d at 337-38 (quoting 1B A. Jenner, *Benedict on Admiralty* § 11a, at 2-10.1 to 2.11 (7th ed. 1994)).

The following rule of thumb was established:

> A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.

*Id.* at 371, 115 S. Ct. at 2191, 132 L. Ed. 2d at 339.

*Stewart* involved a claim by a worker injured while on board a dredge called the "Super Scoop,"

> from which a clamshell bucket is suspended beneath the water. The bucket removes silt from the ocean floor and dumps the sediment onto one of two scows that float alongside the dredge. The *Super Scoop* has certain characteristics common to seagoing vessels, such as a captain and crew, navigational lights, ballast tanks, and a crew dining area. But it lacks others. Most conspicuously, the *Super Scoop* has only limited means of self-propulsion. It is moved long distances by tugboat. . . . It navigates short distances by manipulating its anchors and cables. When dredging the Boston Harbor trench, it typically moved in this way once every couple of hours, covering a distance of 30-to-50 feet each time.

543 U.S. at 484-85, 125 S. Ct. at 1121-22, 160 L. Ed. 2d at 939-40. Stewart was working on the barge as a marine engineer when he was injured. He sued under the Jones Act, and the principal issue discussed by the Supreme Court was whether the *Super Scoop* was a "vessel" under federal statutes. The Court noted that the federal statutory definition of vessel

> requires only that a watercraft be "used, or capable of being used, as a means of transportation on water" to qualify as a vessel. It does not require that a watercraft be used *primarily* for that purpose.

*Id.* at 495, 125 S. Ct. at 1128, 160 L. Ed. 2d at 946 (quoting 1 U.S.C. § 3). The *Stewart* Court specifically rejected the reasoning of *DiGiovanni v. Traylor Brothers, Inc.*, 959 F.2d 1119 (1st Cir. 1992), which held that a watercraft was not a vessel under the Jones Act because its primary purpose was not navigation or commerce, and it was not in actual transit at the time of the

claimant's injury. *Stewart*, 543 U.S. at 495, 125 S. Ct. at 1127-28, 160 L. Ed. 2d at 946. As explained in *Stewart*, 1 U.S.C. § 3 requires only that a watercraft be capable of being used as a means of transportation and does not require that transportation be the primary purpose for operating the craft. Also, the Court ruled that the watercraft need not be in motion at the time of injury because "a watercraft [does not] pass in and out of Jones Act coverage depending on whether it was moving at the time of the accident." *Id.* at 495-96, 125 S. Ct. at 1128, 160 L. Ed. 2d at 946-47.[1] The Court in *Stewart* noted that the *Super Scoop* dredge was not only "capable of being used" to travel the water—it was actually being used for that purpose. 543 U.S. at 495, 125 S. Ct. at 1128, 160 L. Ed. 2d at 946.

We held in *Hayden v. Ameristar Casino Council Bluffs, Inc.*, 641 N.W.2d 723 (Iowa 2002), that Jones Act preemption claims must be evaluated with the aid of a factual record because jurisdictional issues such as this involve mixed questions of law and fact. Further, claims of "seaman" status are usually hotly contested. *Id.* at 724-25. The parties in this case made a record regarding the nature of the watercraft, and it is not disputed that the riverboats were capable of, and did, ply the waters of the Missouri River approximately 200 hours per year as required by Iowa's gaming laws.

A seaman under the Jones Act must be a member of the crew and must contribute to the function of the vessel or to the accomplishment of its mission. *Chandris*, 515 U.S. at 376, 115 S. Ct. at 2194, 132 L. Ed. 2d at 317. It is undisputed that the mission of these riverboats was to provide gambling for its patrons and that these claimants contributed to that function. Applying the rationale of *Stewart*, we hold these claimants were

---

[1]We reject the claimant's argument that *Stewart*'s definition of vessel is inapposite in this case on the ground that *Stewart* was decided under the LHWCA and not the Jones Act. The Supreme Court made it clear in *Stewart* that the term "vessel" was interchangeable under both statutes. *Id.* at 491-92, 125 S. Ct. at 1125, 160 L. Ed. 2d at 944.

"seamen" and the workers' compensation commission was therefore without subject matter jurisdiction to award benefits.

We affirm the decision of the court of appeals, reverse the judgment of the district court, and remand for dismissal of the workers' compensation claims.

**DECISION OF COURT OF APPEALS AFFIRMED, JUDGMENT OF DISTRICT COURT REVERSED, CASE REMANDED.**

All justices concur except Hecht and Appel, JJ., who take no part.